

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PHILIP D. ATKINS,

      Plaintiff,

v.

      Civil Action No.: 3:14-CV-00505

FED EX FREIGHT, INC.,
SERVE:      **Registered Agent**
               **CT Corporation System**
               **4701 Cox Road, Suite 285**
               **Glen Allen, VA 23060**



      Defendant.

**JURY TRIAL
DEMANDED**

## COMPLAINT

The plaintiff Philip D. Atkins (Atkins"), by counsel, and for his Complaint against the defendant Fed Ex Freight, Inc. ("Fed Ex"), represents unto the Court as follows:

## INTRODUCTION

Atkins brings this civil action against his former employer alleging race discrimination and retaliatory discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 and 3. Atkins also brings a state common law claim for intentional infliction of emotional distress.

## JURISDICTION

1. Jurisdiction over Atkins' federal claims is based on 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(3) (violation of civil rights). Atkins' pendent state law claim is brought pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is proper in this District and Division, as it is the situs of the parties and of the events complained of herein.

## THE PARTIES

2. Atkins is an African-American male residing in Henrico County, Virginia.

3. Fed Ex is believed to be a corporation duly organized in one of the United States. It provides heavyweight, less-than-truckload freight shipping services in the eastern United States, and is headquartered in Harrison, Arkansas. Atkins was employed at Fed Ex's Richmond-area Service Center facility located at 13301 Grover Court, Chester, Virginia 23836. At all times during the events complained of herein, Fed Ex employed a sufficient number of individuals to be deemed a "respondent" as understood under 42 U.S.C. § 1981a(b)(3).

## ALLEGATIONS COMMON TO ALL COUNTS

4. Atkins commenced employment with Fed Ex on October 26, 2009 as a Supplemental City Driver. He was later promoted to City Driver. His work record demonstrated that he was performing his job duties in a satisfactory manner.

5. In or about August 2012, two African American truck drivers were discharged from employment as truck drivers for Fed Ex by management of the Richmond Service Center. The two fired African American drivers, and a Caucasian supervisor, informed Atkins that management had a "hit list" of other African American drivers terminal management wanted to fire, which included Atkins.

6. In mid-October 2012, two female clerks in the Richmond Service Center office, one Caucasian and one African American, informed Atkins that service center management was searching for a way to fire him.

7. On October 17, 2012, the Operations Manager of the terminal approached Atkins with a review of a time tracking report that records time for drivers in the field. Usilton stated that the day before, on October 16, 2012, Atkins had supposedly committed a Compensated Time

2

Violation by taking a bathroom break without notifying dispatch of the occurrence. Atkins responded that management had never previously required drivers to notify the dispatch office of bathroom breaks, or considered such unreported breaks as violations of company time policy.

8. Atkins asked Usilton if the purported violation would result in any discipline. Usilton responded that he didn't know, but that it could result in Atkins' termination from employment.

9. During the following week, three Caucasian employees who were aware of Atkins Compensated Time Violation informed him that they had been similarly charged with Compensated Time Violations for taking unauthorized breaks. In each instance, however, the Caucasian employees indicated that they were issued mere verbal warnings.

10. Within five days of the October 17, 2012 conversation with Usilton, an African American supervisor of Atkins advised him to contact Charles Pullen, Fed Ex's District Human Resources Manager in Atlanta, Georgia. Atkins advised Pullen that had requested training for time reporting in order to avoid just such policy infractions. He was informed, however, by Ike Fanz, Service Center Manager, that Fed Ex couldn't train him.

11. Shortly thereafter, one of the aforementioned terminal clerks told Atkins that management was recommending his termination for the supposed Compensated Time Violation.

12. On or about October 31, 2012, Atkins received a Corrective Action Form noting the aforementioned Compensated Time Violation from October 16, 2012. The form noted that management recommended Atkins' termination from employment.

13. The foregoing form charged Atkins with taking unauthorized lunches. Atkins informed Usilton that this charge was false because his driving duties prevented him from taking lunch during the customary lunch hour. Accordingly, the dispatch department advised Atkins to

3

clock out during the lunch hour even though he was working, and to take his actual lunch later in the day.

14. Sometime during the following week, Pullen called Atkins to advise that Fed Ex could not terminate him for the purported Compensated Time Violation. Atkins responded that terminal management had already recommended his termination. Atkins also informed Pullen that management had charged three Caucasian drivers with similar time violations, but had issued mere verbal warnings instead of employment termination. Pullen responded that he would investigate the matter.

15. On or about November 1, 2012, Fanz approached Atkins and attempted to intimidate him into admitting wrongdoing. When Atkins refused, Fanz said he wanted to fire him, but would instead extend him "mercy and grace." Upon hearing this, Pullen stated it was on account of his intervention that Atkins' wasn't fired, not Fanz's "mercy and grace."

16. Nonetheless, on November 13, 2012, Atkins was issued a Corrective Action Form terminating his employment.

17. Pullen advised Akins to appeal his termination, which Atkins did. Atkins was suspended without pay for three days, and then returned to work under probation during the pendency of the appeal.

18. During the pendency of the appeal, Pullen instructed the Fed Ex human resources officer of the Richmond Service Center, Adrian Prentiss, to investigate Atkins' allegations of race discrimination.

19. On March 5, 2013, Atkins was informed that the appeal was decided in his favor. He received a check from Fed Ex reimbursing him for the three days that he was suspended without pay.

4

20. On March 7, 2013, Assistant Service Center Manager Terrene Collins approached him and chided him in the presence of other employees for prevailing in his appeal and being reimbursement his lost wages. Collins then grabbed strongly Atkins by the arm and said menacingly, "this isn't over."

21. On March 11, 2013, Atkins gave a written statement to Fed Ex about the aforementioned physical altercation by Collins.

22. On March 12, 2013, Fed Ex Security Officer Norm Cullen interviewed Atkins about the incident. Atkins informed him of the race discrimination behind the termination resulting from the Compensated Time Violation.

23. During the nearly four months that Atkins was on probation during the appeal of his termination, he lost multiple opportunities for promotions that would have increased his salary by approximately $30,000. Akins' probation also deprived him opportunities for transfer to a different Fed Ex service center.

24. As a result of the emotional distress and mental anguish that he suffered as a result of being placed on a "hit list" over his race, being discrimination against on account of his race, being terminated from employment on account of race and retaliation, and being assaulted, as described herein, Atkins sustained post-traumatic stress disorder, extreme anxiety and panic disorder.

25. Atkins did not return to work after March 7, 2013, but instead applied for and was awarded long term disability benefits through Fed Ex's disability insurance carrier. While on disability, Atkins has been receiving 60% of his former active employment salary.

26. Atkins has been informed by Fed Ex that his employment will be administratively ended on September 6, 2014, and that as a result, his long term disability benefits will cease.

27. Atkins is in the process of applying for Social Security Disability Insurance benefits.

28. Upon information and belief, Atkins' employment with Fed Ex was terminated by Fed Ex's Richmond Service Center management, including Service Center Manager Ike Fanz, Assistant Service Center Manager Terrence Collins and Operations Manager, Kevin Usilton, on account of bias against his African-American race, and in retaliation for complaining to the company's District Human Resources Manager Charles Pullen that terminal management was engaging in race discrimination in disciplining Atkins for the same conduct for which Caucasian truck drivers were issued mere verbal warnings.

29. Akins exhausted the remedies available to him by filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on March 5, 2013 alleging race discrimination, and retaliation. On April 18, 2014, Akins received a Notice of Right to Sue from the EEOC that was dated being mailed on April 15, 2014.

30. As a direct result of being discharged from his employment with Fed Ex and being inflicted with emotional distress and mental anguish, as described herein, Atkins has suffered and will continue to suffer lost earnings, loss of employment-related benefits, injury to his professional reputation, diminished opportunity for promotion and career advancement, emotional distress, and public humiliation and embarrassment.

31. Atkins has also had to surrender his commercial driver's license on account of his stress-related medical condition, which was inflicted on him by Fed Ex's discriminatory and retaliatory actions against him, including the physically accosted.

COUNT I
RACE DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-2

32. By subjecting Atkins to discrimination in discipline, employment termination and inflicting on him emotional distress and mental anguish, as described herein, Fed Ex subjected

6

him to discrimination in the terms and conditions of his employment on account of his African American race, in violation of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

33. Atkins' injuries under this Count entitle him to an award for (a) loss of past and future earnings, including fringe benefits; (b) humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) injury to his future career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

## COUNT II
### RETALIAITON IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e-3

34. By subjecting Atkins to discrimination in discipline, employment termination, physical assault and inflicted on him emotional distress and mental anguish, as described herein, in direct response to his complaining of race discrimination, as described herein, Fed Ex retaliated against him for engaging in a protected activity, in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

35. Atkins' injuries under this Count entitle him to an award for (a) loss of past and future earnings, including fringe benefits; (b) humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) injury to his future career; (d) punitive damages; (e) attorney's fees under 42 U.S.C. § 1988; and (f) costs of suit.

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

36. By subjecting Atkins to discrimination in discipline, employment termination, physical assault and inflicted on him emotional distress and mental anguish, as described herein, in direct response to his complaining of race discrimination, as described herein, Fed Ex, through

7

its management team at the Richmond Service Center, intentionally inflicted emotional distress on Atkins.

37. Atkins' injuries under this Count entitle him to an award for (a) loss of past and future earnings, including fringe benefits; (b) humiliation, pain and suffering, emotional distress, and loss of personal and professional reputation; (c) injury to his future career; (d) punitive damages; and (e) costs of suit.

WHEREFORE, the plaintiff Philip D. Atkins demands judgment against the defendant Fed Ex Freight East, Inc. in the amount of ONE MILLION DOLLARS ($1,000,000.00) in compensatory and punitive damages, interest, attorney's fees and costs of suit, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

PHILIP D. ATKINS

By: _____
Counsel

Scott Gregory Crowley (VSB # 31216)
CROWLEY & CROWLEY
Overlook II Building
4870 Sadler Road, Suite 300
Glen Allen, VA 23060
(804) 205-5010
(804) 205-5001 (fax)
E-mail: scrowley@crowleyandcrowley.com
Counsel for plaintiff

8