**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| PHILIP D. ATKINS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **CASE NO. 3:14-CV-505** |
| | ) |
| FEDEX FREIGHT, INC., | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant FedEx Freight, Inc. (hereinafter "FXFI"), by counsel, and hereby submits its Memorandum of Law in Support of Defendant's Motion for Summary Judgment. In support, Defendant states the following:

**INTRODUCTION**

Plaintiff Philip Atkins, a pick-up and delivery truck driver ("City Driver"), is a current FXFI employee who has been on a leave of absence for 1½ years. Between October 8-16, 2012, in multiple instances, Plaintiff's GPS location did not match his entries in his handheld device. Further, in repeated instances, GPS data showed that he stopped his vehicle without explanation or communication with dispatch for over 15 minutes each time, totaling over two hours of unproductive time. Although Plaintiff's immediate supervisors wanted to discharge him for that misconduct, Human Resources ("HR") Manager Charlie Pullen (African-American) determined that FXFI should only place Plaintiff on a Critical Written Corrective Action with (3-day) suspension for the Compensated Time Violation and, ultimately, FXFI reduced even that discipline to a simple Written Corrective Action.

Notwithstanding the severity of his misconduct and his exceedingly light discipline, Plaintiff filed this suit, alleging that FXFI disciplined him more severely than certain coworkers based on his race, subjected him to a racially hostile work environment, and retaliated against him in alleged violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et. seq.*  He also asserts a claim for intentional infliction of emotional distress ("IIED").  Plaintiff asserts the Title VII discriminatory discipline claim despite the fact that FXFI never subjected him to an adverse action (ultimately only receiving a Written Corrective Action) and despite the fact that the HR Manager who recommended his initial, more serious disciplinary action (3-day suspension) is the same race as Plaintiff.  He asserts the hostile work environment claim despite the fact that he did not allege harassment in his EEOC Charge.  He asserts a retaliation claim despite the fact that the disciplinary action he complains about occurred <u>before</u> he engaged in any allegedly protected activity.  Finally, he asserts an IIED claim despite being time-barred from doing so, and despite alleging conduct that – even if true – is insufficiently intentional, reckless, severe, and outrageous to state a claim.

As explained below, there is no genuine issue of material fact and FXFI is entitled to summary judgment in its favor as a matter of law.

<u>**STATEMENT OF UNDISPUTED MATERIAL FACTS**</u>

**A.     FXFI Hires Plaintiff as a City Driver in Richmond**

FXFI offers reliable and fast delivery of less-than-truckload shipments of time-sensitive large freight, primarily for businesses that do not operate their own truck fleets.  Declaration of Ike Fanz , Ex. A.  To carry out its operations, FXFI relies on Road Drivers, who transport freight between FXFI Service Centers, and City Drivers, who transport the freight between FXFI locations and customers.  Fanz Dec., Ex. A.

On September 23, 2009, Plaintiff applied for employment with FXFI's Richmond Service Center ("RCH").  Ex. B, Pl.'s Dep. 268: 2-10, Feb. 3, 2015.  In his Employment Application, Plaintiff agreed to bring any legal action against FXFI within six months after "the date of the event forming my basis of my claim or lawsuit, whichever expires first.  I waive any statute of limitations to the contrary."  *Id.* at 268:13-19.

FXFI hired Plaintiff as a Supplemental City Driver in Richmond on October 26, 2009.  Pl.'s Second Am. Compl. at 2, ¶ 14.  FXFI later promoted him to a City Driver position.  *Id.*  As a City Driver, he picked-up and delivered freight between RCH and local customers and provided related customer services.  Pl.'s Dep. at 41:22; 42:1-3.

**B.    FXFI Issues Plaintiff a Critical Written Corrective Action for Multiple Violations**

On or about October 17, 2012, and after performing an investigation, RCH Operations Manager Kevin Usilton informed Plaintiff that FXFI had concluded that he had committed multiple violations of FXFI time policies; specifically, Compensated Time Violations.  Pl.'s Second Am. Compl. at 3, ¶ 7.  After reviewing the evidence of Plaintiff's violations, Usilton, RCH Manager Ike Fanz, Managing Director Thomas Putnam, and HR Advisor Adrian Prentiss all agreed that Plaintiff's conduct warranted discharge.  Ex. C, Pullen Dep. at 30:14-31:5; 32:10-12.  However, HR Manager Charlie Pullen (African-American) did not approve termination,[1] so he vetoed that recommendation and placed Atkins on a Critical Written Corrective Action with suspension.  Pullen Dep. at 33:19-34:7.  The Critical Written Corrective Action explained:

> Operations manager Kevin Usilton performed Eden reviews during the time frame of 10/8/2012 through 10/16/2012.  He found numerous examples of where Mr. Atkin's [sic] gps location did not match his handheld entries through the cn70. He found examples of Mr. Atkins showing to be enroute [sic] home but actually stopped at a different location.  Phil was also stopping for more than 15 minutes

---

[1] Plaintiff's managers did not have authority to discharge him.  Rather, Mr. Pullen's approval was required for any such decision.  Pullen Dep. at 33:19-22.

without communicating to dispatch, and in the time period captured, stops totaled over 2 hours of unproductive time.

Pl's Dep. at Exhibit 2, FXFI 000085; Pl.'s Dep. at 260:11-22, 261:1-16.  FXFI neither terminated Plaintiff's employment nor advised him that he was terminated.  Pl.'s Dep. at Exhibit 2, FXFI 000085; Pl.'s Dep. at 173:5-6; 62:7-16.

## C.   Plaintiff Complains About Local FXFI Management's Issuance of Discipline

Plaintiff alleges that he lodged a complaint about FXFI's local management during the week after he received the Critical Written Corrective Action.  Pl.'s Second Am. Compl. at 4, ¶¶ 12, 14.  Specifically, he alleges that he told Pullen that FXFI punished him more harshly than three Caucasian drivers with allegedly similar time violations.  *Id.*

## D.   Plaintiff Appeals His Critical Written Corrective Action And His Discipline is Reduced in Severity

Plaintiff internally appealed his Critical Written Corrective Action and associated three-day suspension.  Pl.'s Dep. at Exhibit 2, FXFI 00086-88.  On March 5, FXFI informed Plaintiff of its decision.  Pl.'s Second Am. Compl. at 7, ¶ 27; Pl.'s Dep. at Exhibit 6, FXFI 000090.  It reduced his Critical Written Corrective Action with suspension to a less severe Written Corrective Action.  *Id.*  Thus, the appeal confirmed that Plaintiff engaged in misconduct, but nonetheless reduced the severity of his discipline.  FXFI also compensated Plaintiff for his suspension without pay.  Pl.'s Second Am. Compl. at 7, ¶ 27.

## E.   After Plaintiff Alleges an Altercation Took Place, FXFI's Security Department Investigates and Finds no Basis for Concluding That FXFI's Policies Were Violated.

Plaintiff alleges that, on March 7, 2013, even though RCH Assistant Service Center Manager Terrence Collins was not involved in either Plaintiff's discipline or appeal, Collins "assaulted" him after chiding him "for prevailing in his appeal and being reimbursed his lost wages".  *Id.* at 7, ¶¶ 28, 31.  Specifically, Plaintiff alleged:

4

> My last day that I was at FedEx, Collins approached me. He assaulted me. He grabbed me. He told me that he heard about the appeal decision, and he expressed to me that it wasn't over, he was going to get me. He also expressed that he heard that when I received the back paycheck for my three-day suspension, he heard that I was complaining because the garnishment for child support had come out of that check, and he went on to say, you know, I thought all of your kids live with you. You know, what you doing paying child support, things of that nature, and then he continued to pretty much reiterate that he would get me, and this was not over.

Pl.'s Dep. at 88:1-13.

In response, FXFI's Security Department investigated.  Inv. Rep., Ex. D, FXFI 000595-97.  On March 11, 2013, Plaintiff provided FXFI with a written statement containing his version of the above incident. Pl.'s Second Am. Compl. at 7, ¶ 29.  FXFI Security Officer Norm Cullen interviewed Plaintiff the following day.  *Id.* at 7, ¶ 30.   Although Plaintiff made no such complaint at the time, he now asserts that, during the investigation, he complained about "the race discrimination behind the termination resulting from the Compensated Time Violation." *Id.;* [2] Inv. Rep., Ex. D, at 2.

Cullen interviewed Collins, who denied intimidating or touching Plaintiff.  Inv. Rep., Ex. D at 1-2.  Cullen also spoke with RCH Operations Manager Mike Capps and Operations Supervisor Robert Loper, and their written statements emphasize that Collins did not physically touch or threaten Plaintiff.  *Id.* at 2-3.  Loper stated that Collins approached Plaintiff, shook his hand, and congratulated him for winning his appeal.  *Id.* at 2.  Moreover, both witnesses stated that Plaintiff was laughing along with Collins during the interaction.  *Id.* at 2-3.  Based on his investigation, Cullen concluded that Plaintiff's allegations were unsubstantiated and therefore did not justify finding any violation of FXFI's workplace violence policy.  *Id.* at 3.

Although FXFI vigorously disputes that any physical assault took place, it is undisputed that the March 7, 2013 incident involving Plaintiff and Collins was unrelated to race; rather,

---

[2] As explained below, FXFI never terminated Plaintiff.

Plaintiff alleges that Collins confronted him for his successful disciplinary appeal. Pl.'s Dep. at 88:1-13. Plaintiff does not allege that Collins assaulted or otherwise confronted him because he complained of race discrimination. Likewise, Plaintiff does not allege that the purported assault constituted an independent act of race discrimination. Rather, Plaintiff clearly asserts that Collins confronted him because he prevailed in his disciplinary appeal. *Id.*

**F.      Plaintiff Commences and is Currently on an Extended Leave of Absence**

Plaintiff did not report for work on March 8, 2013. Pl.'s Second Am. Compl. at 7, ¶ 32. On March 15, 2013, he requested a leave of absence, reporting "Anxiety Disorder/Prescription (Xanax)." He received short-term disability for six months and then commenced long-term disability leave. Pl.'s Dep. at 27:15-22, 28:1-2.

**G.      Plaintiff Files an EEOC Charge**

On March 20, 2013, Plaintiff filed an EEOC Charge. Ex. E, Pl.'s EEOC Charge. In relevant part, Plaintiff asserted claims of race discrimination and retaliation (that is, he marked the "retaliation" box on the Charge but did not allege any facts constituting retaliation) under Title VII, alleging that FXFI disciplined him more severely than Caucasian co-workers. *Id*. He did not allege that FXFI retaliated against him in response to a complaint of race discrimination (or any other protected activity). Likewise, the Charge neither alleged a race harassment claim nor asserted any facts that would support such a claim. *Id*.

**STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(a), a court "shall" grant summary judgment where the movant shows "that there is no genuine dispute as to any material fact" and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must state the basis of its motion and identify portions of the record that show the absence of a genuine issue of

6

material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Plaintiffs may not rest upon mere allegations or denials.  *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986).  Rather, Plaintiffs must "go beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial."  *Celotex,* 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.

"Where … the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  *United States v. Lee,* 943 F.2d 366, 368 (4th Cir. 1991).  "Summary judgment … is not a disfavored procedural shortcut, but rather is an integral part of the Federal Rules of Civil Procedure, designed to secure the just and expeditious resolution of every civil matter."  *Graham v. Pactiv Corp. Benefits Comm.*, 301 F. Supp. 2d 483, 491-92 (E.D.Va. 2004) (Payne, J.) (internal citations omitted).

## ARGUMENT AND AUTHORITIES

**A.      This Court Should Enter Judgment in
         Favor of FXFI on Plaintiff's Race  Harassment Claim.**

1. This Court lacks subject matter jurisdiction over Plaintiff's race
   harassment claim because he failed to exhaust his administrative remedies.

This Court should enter judgment in favor of FXFI on Plaintiff's race harassment claim because he did <u>not</u> assert it in his EEOC charge.  "Before filing suit under Title VII, a plaintiff must exhaust [his or] her administrative remedies by bringing a charge with the EEOC."  *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).  If a plaintiff fails to exhaust administrative remedies concerning a Title VII claim, the court lacks subject matter jurisdiction over it.  *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

"The Fourth Circuit has consistently held that a plaintiff's claim exceeds the scope of the EEOC charge where the charge alleges one basis of discrimination and litigation introduces another independent basis." *Baiden-Adams v. Forsythe Transp., Inc.*, 969 F.Supp.2d 422, 428 (E.D.Va. 2013) (citing *Chacko v. Patuxent Inst.,* 429 F.3d 505, 509 (4th Cir. 2005)).  Similarly, "'the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct.'" *Id.* (citing *Chacko,* 429 F.3d at 509).  Courts within the Fourth Circuit (including this District) consistently hold that allegations of harassment fall outside the scope of an EEOC charge that alleges only discrimination or retaliation.  *See Taylor v. Virginia Union University*, 193 F.3d 219, 239 (4th Cir. 1999); *Baiden-Adams,* 969 F.Supp.2d at 429-30; *Keck v. Virginia*, No. 3:10-cv-555, 2011 WL 4589997, at *16-17 (E.D.Va. Sept. 9, 2011) (stating that the plaintiff failed to exhaust as to hostile environment, discrimination, disparate treatment and disparate impact claims when EEOC charge only asserted retaliation).

Plaintiff's EEOC Charge lacks any reference to harassment or to any facts underpinning the purported claim in his pleading.  Rather, the Charge only alleged race discrimination based on disparate treatment, retaliation under Title VII and retaliation under the ADA.  This Court therefore lacks subject matter jurisdiction over Plaintiff's harassment claim.

    2.   This Court should also enter judgment in favor of FXFI on Plaintiff's race harassment claim because he cannot establish a *prima facie* case of racial harassment.

To establish a *prima facie* race harassment claim, Plaintiff must demonstrate that the alleged harassment was (1) unwelcome; (2) based on race; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment; and (4) imputable to the employer. *E.E.O.C. v. Central Wholesalers Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Plaintiff cannot establish the second or third elements.

Plaintiff incorrectly alleges that the following comments/conduct constitute severe and pervasive race based harassment:

- Fanz "verbally abused" him by adamantly insisting (in an allegedly "aggressive" tone) that he admit wrongdoing in connection with the Compensated Time Violation and for stating that he wanted Plaintiff fired for the violation. Pl.'s Dep. 40:11-14;45:5-11;52:2-15; 53:2-18;54:3-13; 57:2-6; 59:9-14; 60:6-14;
- Usilton harassed him by asking him how much he spent on his dreadlock hairstyle, commenting on Plaintiff's watch and clothes, and stating that Plaintiff was paid more money than him. *Id.* at 178:10-21;
- Capps once blocked the door to Collins' office while Plaintiff was in it, refused to let Plaintiff pass, and told Collins that he felt threatened by Plaintiff. *Id.* at 95:127: 14-19; 128:1-7; and
- Collins remarked several times that Plaintiff's hairstyle reminded him of pineapples he picked as a youth and split open with a machete. *Id.* at 65: 8-17. Plaintiff also asserts that Collins joked that he wanted to treat Plaintiff's head like a pineapple. *Id.* at 67:7-11; 68:3-4. Finally, Plaintiff claims Collins harassed and "assaulted" him by grabbing his arm. *Id.* at 88:1-13.

As explained below, none of these alleged acts support the harassment claim because none were based on race, and thus cannot satisfy the second element. Even if he could establish race-based comments/conduct, Plaintiff cannot establish the third element.

### a) *The racially-neutral remarks alleged by Plaintiff do not support his race harassment claim because they were not based on race.*

To establish that alleged harassment is motived by race, a plaintiff must demonstrate that "but for" his race, his employer would have treated him differently. *See Gilliam v. South Carolina Dept. of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007). "General harassment if not racial or sexual is not actionable." *See Bolden v. PRC, Inc.*, 43 F.3d 545, 549-51 (10th Cir. 1994) (holding that workplace "permeated with 'intimidation, ridicule, and insult'" was not racial or sexual harassment because it was not based on race or sex), *cert. denied*, 516 U.S. 826 (1995). None of the aforementioned conduct/comments alleged by Plaintiff pertain to race. Indeed, Plaintiff admits that Fanz did not make racial remarks to him. *See* Pl.'s Dep. 124:14-15

9

("I'm not saying – I'm not implying that he [Fanz] mentioned anything about my race."). Rather, Plaintiff specifically admits that much of the conduct he alleges was ***not*** based on race:

> A    Ike Fanz expressed to me he didn't -- in our conversation that we discussed earlier, he felt that I was well liked by the people, and I scared him, and he wanted to fire me. Now –
>
> Q    **There's _nothing racial_ in there. There's nothing that says that's because Phil Atkins is black.**
>
> A    _**I'm not saying it is**_. I said it was harassment.

Pl.'s Dep. 123:14-17 (emphasis added);

Likewise, Plaintiff's allegation that Usilton asked him how much he spent on his dreadlock hairstyle is not based on race because a hairstyle is a mutable characteristic not protected by Title VII. *See E.E.O.C. v. Catastrophe Mangem*. No. 13–00476, 2014 WL 1347739 (S.D.Ala. Mar. 27, 2014) (dismissing claim that grooming policy prohibiting dreadlocks was racially discriminatory because "[a] hairstyle, even one more closely associated with a particular ethnic group, is a mutable characteristic"). Indeed, Plaintiff concedes that "there are Caucasians who have dreadlocks as well." Pl.'s Dep. 179:7. Moreover, Plaintiff concedes that Usilton's comments were not racial. S*ee id.* at 180:15-181:4 (stating that Plaintiff's allegations concerning Mr. Usilton were to "prove the harassment part" and that "the racial part is the difference between the corrective action for the compensated time violation"). This is self-evident, as referring to an individual's hair style, clothing, watch, and income are inherently race-neutral. In any event, and in the alternative, isolated comments are not sufficiently severe or pervasive to create a hostile work environment as a matter of law.

The alleged conduct/comments Plaintiff assigns to Capps and Collins are similarly race-neutral. Physical acts such as grabbing someone's arm or blocking an office door, though unpleasant, do not implicate race. Additionally, Collins' alleged comments comparing Plaintiff's

hairstyle to a pineapple are race-neutral because hairstyles are mutable characteristics not protected by Title VII. *See E.E.O.C. v. Catastrophe Mangem.* 2014 WL 1347739.

Apparently, Plaintiff contends that race-neutral "harassment" is sufficient to support a claim under Title VII. It is not. *See, e.g. Patterson v. County of Fairfax*, 215 F.3d 1320, 2000 WL 655984, at *4 (4th Cir. May 18, 2000) (unpublished) (limiting consideration of plaintiff's harassment claim to race-and-sex-based incidents because "inferring that all of the incidents were based on sex and race would "transmute ... workplace disagreements between individuals of different races [and genders] into actionable race [or gender] discrimination"). Thus, Plaintiff's race harassment claim fails because none of the above incidents were based on race.

> b)  *Plaintiff alleges only a single remark relating to race,*
>     *which is not sufficiently severe or pervasive to establish harassment.*

To establish the third element of a prima facie case of race harassment, Plaintiff must prove that the harassment affected a term, condition, or privilege of employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). This requires proof that the harassment is "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986) (internal quotation marks omitted; alteration in original).

"[B]oth subjective and objective components" are required to prove that conduct was "severe or pervasive." *Ocheltree v. Scollon Prods., Inc.,* 335 F.3d 325, 333 (4th Cir. 2003) (en banc) (citing *Harris,* 510 U.S. at 21–22). "The environment must be perceived by the victim as hostile or abusive, and that perception must be reasonable." *Ziskie v. Mineta,* 547 F.3d 220, 227 (4th Cir. 2008). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 81 (1998) (quoting *Harris,* 510 U.S. at 23).

11

In addition to his race-neutral allegations, Plaintiff asserts that Collins once showed him a pistol and stated that he stays "strapped in case Black guys like you with your dreadlocks run up on me." Pl's Ans. to D's Interrog. No. 9, Ex. H. Even if that alleged remark was based on race,[3] it is insufficient to establish Plaintiff's race harassment claim. Alleged harassment "must be more than episodic, it must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, n.1 (1998). Isolated incidents must be "extremely serious" to underpin a hostile work environment claim. *See Faragher*, 524 U.S. at 787-88 (stating that "[a] recurring point in [our] opinions is that 'simple teasing,' offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'"). Accordingly, courts routinely hold that single or isolated racial comments do not amount to a severe or pervasive hostile environment. *See Belton v. City of Charlotte*, 175 Fed. Appx. 641, Nos. 05-1268, 05-1450, 05-1459, 2006 WL 1444394 at * 12 (4th Cir. May 23, 2006) (unpublished) (holding that a single incident of co-worker's use of the word "n-----" not sufficiently severe or pervasive so as to create hostile environment); *Shields v. Fed. Express Corp.*, No. 03-2103, 120 Fed. Appx. 956, 961, 2005 WL 102990 (4th Cir. Jan. 19, 2005) (unpublished) (affirming summary judgment for employer and holding that a single use of a racial slur was episodic and isolated and not "sufficiently continuous and concerted [...] to be deemed pervasive") (internal citation omitted). Collins' alleged comment falls well short of the "extremely serious" bar erected by the U.S. Supreme Court; therefore, this Court should enter judgment in favor of FXFI on Plaintiff's race harassment claim.

---

[3] At least one court in the Fourth Circuit has held that "the addition of the word 'black' to the otherwise racially neutral name-calling and profanity does not support a claim of hostile environment." *Rose v. Son's Quality Food Co.*, No. AMD 04–3422, 2006 WL 173690, at *4 (D.Md. Jan. 25, 2006).

**B.    This Court Should Enter Judgment in Favor
of FXFI on Plaintiff's Race Discrimination Claim.**

Plaintiff claims that he was subjected to "more severe discipline" than Caucasian employees (including a "recommendation for termination of employment").  Pl.'s Second Am. Compl., at 8, ¶ 35, and 9, ¶ 42.  Plaintiff also incorrectly alleges that FXFI "discharged [him] from his employment."  *Id.* at 9, ¶ 42.[4]  As explained below, this Court should grant summary judgment in FXFI's favor on Plaintiff's race discrimination claim.

To establish a *prima facie* case of disparate treatment based on race, Plaintiff must show four elements: (1) Plaintiff is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that he was treated differently than similarly situated employees outside his protected class.  *See, e.g. Hill v. Lockheed Martin Logistics Mgmt*., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

Plaintiff's burden is heavy: "[t]he similarity between comparators and the seriousness of their respective offenses must be ***clearly established*** in order to be meaningful."  *Lightner v. Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008) (emphasis added).  Plaintiff must show that the comparators are similarly situated in <u>all relevant respects</u>, meaning that they dealt with the <u>same supervisor</u>, <u>were subject to the same standards</u>, and <u>engaged in the same conduct</u>.  *Heyward v. Monroe,* 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998) (unpublished) (stating that employees are similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards[,] and ... engaged in the same conduct [...]").  Plaintiff cannot establish the second, third, or fourth elements of his race discrimination claim.

---

[4] Counsel for Plaintiff has clarified that Plaintiff is not pursuing a claim for race discrimination in termination or constructive discharge.  *See* email exchange attached as Ex. F.

13

1. Plaintiff cannot establish the second element of the *prima facie* case because he did not suffer an adverse employment action.

Plaintiff's assertion that one or more supervisors "recommended" him for termination is not actionable because a "recommendation" is not an adverse employment action. *See Adkins v. Fairfax County School Bd.,* No. 1:08-cv-91, 2008 WL 2076654, at *6 (E.D.Va. May 15, 2008) (stating that "a recommendation … that Plaintiff be terminated does not qualify as an adverse employment action"). FXFI did not terminate Plaintiff. Pl.'s Dep. at Exhibit 2, FXFI 000085; Pl.'s Dep. at 173:5-6; 62:7-16. Instead, FXFI initially suspended him for three days. Pl.'s Dep. at Exhibit 2, FXFI 000085; Pl.'s Dep. at 173:7-9. In any event, Plaintiff appealed his suspension, and in response FXFI reduced it to a mere warning and reimbursed him. Pl.'s Second Am. Compl. at 7, ¶ 27; Pl.'s Dep. at Exhibit 6, FXFI 000090.

Plaintiff's Written Corrective Action also does not constitute an adverse action. This Court has repeatedly held that written reprimands are not "adverse employment actions" under Title VII, but rather fall within the category of "interlocutory or mediate decisions having no immediate effect upon employment conditions." *Jackson v. Winter*, 497 F.Supp.2d 759, 770-71 (E.D.Va. 2007) (holding that written reprimand was not an adverse employment action because it had no impact on the plaintiff's rank, salary, or employment benefits, and was "essentially a warning that future unprofessional behavior would not be tolerated"). Likewise, Plaintiff's Written Corrective Action was a mere reprimand that had no impact on Plaintiff's rank, salary or employment benefits. Fanz Dec., Ex. A. As in *Winter*, Plaintiff's Written Corrective Action was merely an admonition that FXFI would not tolerate future violations of its compensated time policies. Pl.'s Dep. at Exhibit 6, FXFI 000090. Accordingly, the Written Corrective Action Plaintiff ultimately received was not an "adverse employment action," and Plaintiff cannot establish a *prima facie* case.

14

Plaintiff also cannot show that the initial Critical Written Corrective Action was discriminatory. HR Manager Pullen (African American) decided that level of discipline for Plaintiff. Pullen Dep. at 33:19-34:7. It is well settled that an allegation of discrimination loses persuasiveness when the decision maker falls within the same protected class as the plaintiff. *See, e.g. Jackson v. Sch. Bd. of the City of Richmond*, No. 3:99-cv-642, 2000 U.S. Dist. LEXIS 4474 at *22 (E.D.Va. Mar. 15, 2000) (Payne, J.); *Williams v. Alternative Behavioral Servs.*, No. 2:03-cv-903, 2004 WL 3258906, at *7 (E.D.Va. Sept. 15, 2004) (stating that "any inference of discrimination is negated when a decision-maker is in the same protected class as the plaintiff").

While this does not completely eliminate the possibility that a member of a particular class might discriminate against another class member, <u>Plaintiff must make some additional evidentiary showing of class-on-class animus to establish pretext</u>. *See U.S. v. Crosby,* 59 F.3d 1133, 1135 n. 4 (11th Cir. 1995). Plaintiff offers no such evidence in this case. This failure requires that this Court enter judgment in favor of FXFI on Plaintiff's race discrimination claim.

2. Plaintiff also cannot establish the third element of a *prima facie* case, i.e., that he was performing at a level that met FXFI's legitimate expectations.

Even if Plaintiff was subject to an adverse employment action – which he was not – he has not and cannot prove that he was meeting FXFI's legitimate expectations at the time of the relevant discipline. Plaintiff neither sought nor provided any evidence – aside from his own subjective opinions – probative of his job performance. Plaintiff's race discrimination claim therefore fails as a matter of law. *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F.Supp.2d 717, 727 (E.D.Va. 2013) (entering summary judgment on Title VII disparate treatment claim because the plaintiff failed to establish satisfactory job performance), *aff'd*, 592 F. App'x 158 (4th Cir. 2014).

In assessing whether an employee was performing his duties to a satisfactory level for the employer, only "'the perception of the decision maker […] is relevant.'" *Johnson v. Mechs. &*

15

*Farmers Bank*, 309 F. App'x 675, 683 n.8 (4th Cir. 2009).  An employee's own perception or opinion of his own job performance is immaterial in determining whether the employee met his employer's legitimate expectations.  *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) (finding that the plaintiff's unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcoming of her co-workers failed to disprove the employer's explanation for its decision).

Plaintiff failed to produce a single iota of evidence in support of his allegation that he met FXFI's legitimate expectations.  Plaintiff could have proved that he was meeting his employer's expectations by: "(1) pointing out concessions by his employer that he was performing satisfactorily at the time of the [adverse action]; (2) offering evidence of his prior satisfactory performance reviews; or (3) providing expert testimony as to the employer's performance expectations and an analysis of his performance in light of those expectations." *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F.Supp.2d 717, 727 (E.D.Va. 2013) (granting summary judgment because the plaintiff failed to establish satisfactory job performance), *aff'd*, 592 F. App'x 158 (4th Cir. 2014).  He proffered none of those.  He did not even seek testimony from relevant managers or present other evidence to show his performance met FXFI's expectations.

In short, Plaintiff can produce nothing on the record to establish that he was meeting FXFI's legitimate expectations at the time of the relevant discipline.  This Court should therefore grant summary judgment in favor of FXFI on Plaintiff's race discrimination claim.

3.  Plaintiff also cannot establish the fourth element of a *prima facie* case because he cannot prove that FXFI treated others more favorably.

Plaintiff asserts that three Caucasian employees (i.e. Christopher Holland, Todd Pendleton and David Jenkins) engaged in comparable conduct but received lesser discipline. However, the undisputed material facts establish that the alleged comparators were not similarly

situated to Plaintiff.  Pl.'s Dep. 262:9-10.  For this reason, Plaintiff cannot establish the fourth element – that FXFI treated others outside his race more favorably.

Title VII Plaintiffs must clearly establish that the comparators on which they rely are similarly situated in all relevant respects, meaning that they dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct.  *See Heyward*, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998) (unpublished).  Here, the facts show that Plaintiff's alleged comparators committed more serious conduct and dealt with different supervisors.

The conduct for which FXFI disciplined Plaintiff was different – and more serious – than that committed by Christopher Holland, Todd Pendleton, and David Jenkins.  Although Plaintiff claims these three had Compensated Time Violations, he concedes that their infractions were less serious than his.  Pl.'s Dep. 262:9-10.  Specifically, Plaintiff admits that company records of his GPS locations reflect numerous instances of location gaps showing stops totaling over two hours of unproductive time committed on multiple days during an eight-day period.  Pl.'s Dep. 261: 6-16; Pl's Dep. at Exhibit 2, FXFI 000085.  However, he admits that Christopher Holland's unproductive time totaled less than two hours on a single day.  Pl.'s Dep. 262: 15-22.  Likewise, he admits that Todd Pendleton's and David Jenkins' unproductive time totaled less than two hours.  Pl.'s Dep. 263:7-264:1.  Plaintiff's conduct was indisputably different and more serious than the conduct of the alleged comparators.  For this reason, Plaintiff cannot show that he was similarly situated to those individuals.

Further, Plaintiff offers no evidence that Pullen, who recommended Plaintiff's initial 3-day suspension, was involved in the discipline of Christopher Holland, Todd Pendleton, or David Jenkins.  Accordingly, Plaintiff cannot establish that the alleged comparators "dealt with the

17

same supervisor," and therefore cannot prove that they are similarly situated. Plaintiff's race discrimination claim fails as a result.

4. Even if Plaintiff could establish a *prima facie* case, his race discrimination claim still fails because he cannot establish that FXFI's reason for disciplining him – Compensated Time Violations – was a pretext for discrimination.

Even if Plaintiff could establish a prima facie case of race discrimination – which he cannot – FXFI had a legitimate, non-discriminatory reason for disciplining Plaintiff; specifically, a Compensated Time Violation. Plaintiff cannot establish that FXFI's reason was a pretext for race discrimination. *Conyers v. Va. Hous. Dev. Auth.*, 927 F.Supp.2d 285, 292 (E.D.Va. 2013) (stating that a "plaintiff [must] prove by a preponderance of the evidence that the employer's proffered reasons were not the employer's true reasons, but rather were a pretext for discrimination"). Therefore, this Court should dismiss Plaintiff's race discrimination claim.

**C.      This Court Should Enter Judgment as a Matter of Law in Favor of FXFI on Plaintiff's Retaliation Claim.**

1. This Court lacks subject matter jurisdiction over Plaintiff's retaliation claim because he did not exhaust his administrative remedies.

This Court lacks subject matter jurisdiction over Plaintiff's retaliation claim because he did not allege, either implicitly or explicitly, facts supporting a retaliation claim in his EEOC Charge. Plaintiff did not allege in his Charge that he previously protested about race discrimination. Rather, he merely asserted that "I also believe I was retaliated against by being physically assaulted and verbally threatened in violation of Section 704a of [Title VII]." Ex. E, Pl.'s EEOC Charge.

In contrast, Plaintiff bases his instant retaliation claim on "discrimination in discipline, physical assault and inflicted [sic] upon him emotional distress and mental anguish [...] in direct response to his complaining of race discrimination." Pl.'s Second Am. Compl. 10. Plaintiff

18

therefore claims – without presenting the same to the EEOC – that his retaliation claim is based on alleged complaints of race discrimination. Moreover, even if Plaintiff had identified a protected activity in his Charge, his current retaliation claim is underpinned by the kind of "broader pattern of misconduct" prohibited by the Fourth Circuit. *Chacko*, 429 F.3d at 509 (stating that "the allegation of a discrete act or acts in an administrative charge is insufficient [to exhaust administrative remedies] when the plaintiff subsequently alleges a broader pattern of misconduct"). As a result, Plaintiff did not exhaust his administrative remedies.

A plaintiff does not exhaust his administrative remedies unless he sufficiently informs the EEOC of the nature of and facts underlying his claims. *Baiden-Adams*, 969 F.Supp.2d at 431. In Baiden-Adams, the plaintiff's EEOC charge stated that "she was discharged following an e-mail to her supervisor regarding a pay raise and that she was subsequently replaced by a male employee." *Id.* The plaintiff later alleged in her lawsuit that "she was terminated based on her 'efforts to protect female drivers' from sexual harassment." *Id.* The Fourth Circuit affirmed dismissal of the claim, finding that it was underpinned by a "wholly new basis for her termination" that could not have been uncovered by the EEOC's reasonable investigation. *Id.*

Plaintiff's retaliation claim in his Charge is even more deficient than the claims in Baiden-Adams because Plaintiff's Charge does not allege any protected activity whatsoever. Accordingly, Plaintiff's Charge did not inform the EEOC of the nature and facts underlying his retaliation claim. Moreover, Plaintiff's retaliation claim in this lawsuit is based on vastly broader theories than alleged in his Charge. For instance, Plaintiff's instant retaliation claim is based on the following items never presented to the EEOC: (a) physical assault; (b) the infliction of emotional distress and mental anguish; and (c) a complaint of race discrimination. Plaintiff's retaliation claim exceeds the scope of his EEOC Charge, thereby depriving this Court of subject

19

matter jurisdiction over it.  This Court should enter judgment in FXFI's favor on that claim as a matter of law.

2.  This Court should also enter judgment in favor of FXFI on Plaintiff's retaliation claim because he cannot establish a *prima facie* case.

Since Plaintiff cannot establish key elements of a *prima* facie case of retaliation, this Court should dismiss that claim.  To establish a *prima facie* case, Plaintiff must prove: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) the protected activity was causally connected to the adverse action.  *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004); *Wells v. Gates*, 336 Fed. Appx. 378, 382–83 (4th Cir. 2009).  As explained below, Plaintiff cannot establish elements two and three.

a)  *Plaintiff's written reprimand was not an adverse employment action and Plaintiff has not suffered an employment termination.*

Plaintiff claims that the Corrective Action Form that FXFI issued to him constitutes an adverse employment action.  Pl.'s Second Am. Compl., at 4, ¶ 12.  However, as discussed above, although FXFI initially suspended him, he admits that he successfully appealed his suspension and FXFI reimbursed him for it.  Pl.'s Second Am. Compl. at 7, ¶ 27; Pl.'s Dep. at Exhibit 6, FXFI 000090.  Thus, Plaintiff concedes that he ultimately received a mere written warning.  As this Court has repeatedly held, written reprimands are not "adverse employment actions" under Title VII, but rather fall within the category of "interlocutory or mediate decisions having no immediate effect upon employment conditions."  *Winter*, 497 F.Supp.2d at 770-71 (emphasis added).  Therefore, the written reprimand Plaintiff ultimately received is not an adverse employment action.

Plaintiff also claims adverse action based on his incorrect assertion that FXFI terminated him in response to his complaints of race discrimination.  However, Plaintiff is still employed by

FXFI.  Prentiss Dep., Ex. G, 33:7-17.  Therefore, termination of employment cannot form the basis for Plaintiff's retaliation claim.

> b) *Plaintiff also cannot prove a prima facie case of retaliation because he cannot establish a causal connection between any protected activity and his written reprimand or purported termination.*

This Court should enter judgment in favor of FXFI on Plaintiff's retaliation claim because he cannot establish the causal connection element of a *prima facie* case.  In part, Plaintiff bases his retaliation claim on two alleged complaints of race discrimination.  The first was an alleged informal complaint to Pullen "that management had charged three Caucasian drivers with similar time violations, but had issued mere verbal warnings instead of employment termination."[5]  Pl.'s Second Am. Compl. at 4, ¶ 14.  He allegedly made a second informal complaint approximately four months later, on March 12, 2013, when he purportedly "informed [Norm Cullen] of the race discrimination behind the termination resulting from the Compensated Time Violation" during the investigation into his alleged altercation with Collins.  *Id.* at 7, ¶ 30.  Neither of those alleged complaints could have been causally connected to the Corrective Action Plaintiff received because, as he concedes, both took place *after* he received the Corrective Action.  Pl.'s Second Am. Compl. at 4, ¶¶ 12, 14; *see Adkins*, 2008 WL 2076654, at *6 (stating that "[o]f course, any action that took place prior to August 4, 2005 cannot constitute an adverse action *because it occurred prior to the protected activity*.") (emphasis added).

Similarly, Plaintiff cannot establish a causal link between his informal complaints and any "termination of employment" because he is still employed by FXFI.  Therefore, Plaintiff's claim fails.  Prentiss Dep., Ex. G, 33:7-17.

---

[5] Plaintiff alleges that he made this complaint during the week after October 31, 2012.  Pl.'s Second Am. Compl. at 4, ¶¶ 12-14.

          *c) Plaintiff cannot establish a causal connection*
             *between his informal complaints and his alleged altercation with Collins.*

In part, Plaintiff claims that his alleged altercation with Collins constituted retaliation for his informal complaints of harassment. However, he cannot establish a causal link between the alleged complaints and the alleged altercation. Not only did the alleged incident take place approximately four months after Plaintiff's last alleged complaint, but Plaintiff implicitly concedes that the incident did not derive from any such complaint. Therefore, Plaintiff's retaliation claim must be dismissed.

The Fourth Circuit is clear that delays of even three to four months are simply too long, as a matter of law, to support a claim of retaliation. Indeed, "[a] significant lapse between the time the employer becomes aware of the protected activity and the time the alleged adverse employment action is taken negates any inference of a causal connection." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The approximately 4-month gap between Plaintiff's last alleged complaint of race discrimination and his alleged altercation with Collins is therefore insufficient to raise an inference of causal connection. *Id.*

Where, as here, a plaintiff cannot offer evidence of temporal proximity, he must offer additional evidence to establish causation. *Koger v. C.T. Woody, Sheriff*, No. 3:09-cv-90, 2010 WL 331759, at *14 (E.D.Va. Jan. 26, 2010). Plaintiff offers no such evidence. Plaintiff alleges that, on March 7, 2013, Collins assaulted him after chiding him "for prevailing in his appeal and being reimbursed his lost wages." Pl.'s Second Am. Compl. at 7, ¶¶ 28, 31. However, Plaintiff does not allege that his appeal of the Critical Written Corrective Action constituted or pertained to a complaint of race discrimination. Indeed, Plaintiff's appeal did not mention race or race discrimination, but instead sought to justify his misconduct. Pl.'s Dep. at Exhibit 2, FXFI

000086-88.  As a result, Plaintiff cannot establish a causal link between any protected activity and the alleged altercation.  For this reason, this Court should enter judgment in favor of FXFI on the retaliation claim.

> d) *Plaintiff cannot underpin his retaliation claim with any "imposition of emotional distress and mental anguish" because it is not an adverse employment action, but rather a conclusory component of Plaintiff's damages request.*

In what can only be described as a "catch-all," Plaintiff finally alleges that FXFI "inflicted on him emotional distress and mental anguish […] in direct response to his complaining of race discrimination."  Pl.'s Second Am. Compl. at 10, ¶ 44.  Plaintiff apparently claims that the infliction of emotional distress and mental anguish is an adverse employment action distinct from his claims of termination, discipline, and assault.  It is not.  In fact, Plaintiff's own allegations are clear that "emotional distress" is merely an alleged injury for which Plaintiff seeks relief – not an adverse employment action such as termination or the like.  Plaintiff's allegations spell this out inasmuch as he claims that he suffered "emotional distress and mental anguish […] as a result of being placed on a "hit list" over his race, being discrimination [sic] against on account of his race, retaliated against for complaining of the race discrimination, being harassed[,] and finally being assaulted."  *Id*. at 7, ¶ 31.  Plaintiff's attempt to cast a component of his damages request as an adverse action is unavailing.

> 3.  Even if Plaintiff could establish a *prima facie* case, his retaliation claim still fails because he cannot establish that FXFI's reason for disciplining him – <u>Compensated Time Violations – was a pretext for unlawful retaliation</u>.

Even if Plaintiff could establish a prima facie case for retaliation, his claim still fails because FXFI had legitimate, non-discriminatory reasons (his Compensated Time Violations) for disciplining Plaintiff and there is no evidence that FXFI's reasons were pretext for unlawful retaliation.  Thus, this Court should dismiss the retaliation claim.

23

**D.    This Court Should Enter Judgment in Favor of FXFI on Plaintiff's IIED Claim.**

Plaintiff cannot succeed on his claim for IIED because he: (a) is time-barred by the contractual limitation contained within his Employment Application; and (b) cannot establish the necessary elements for a claim for IIED.

1.    Plaintiff's IIED claim is time-barred.

In Badgett v. Federal Express, a court within the Fourth Circuit recognized that "parties may agree to a limitations period shorter than that provided by state law."  378 F.Supp.2d 613, 623 (M.D.N.C. 2005) (citing *Missouri, Kan. & Tex. Ry. Co. v. Harriman Bros.,* 227 U.S. 657, 673 (1913)).  That court applied a two-part test governing the enforceability of contractual limitations clauses.  The first prong examines whether a statute prohibits the application of the limitations clause.  *Id.* (citing *Order of United Commercial Travelers of Am. v. Wolfe,* 331 U.S. 586, 608 (1947)).  The second prong examines whether the contractual limitations clause is reasonable under the circumstances.  *Id.*  After examining a contractual limitations clause materially identical to the one at issue in this case, the Badgett court applied these two prongs and found the clause enforceable.  *Badgett,* 378 F.Supp.2d at 621.

This Court should dismiss Plaintiff's IIED claim as time-barred pursuant to the contractual limitations clause in his Employment Application.  In it, Plaintiff agreed to bring any legal action against FXFI "within six months after the date of the event forming [the] basis of [his] claim or lawsuit […]" and further agreed to "waive any statute of limitations to the contrary."  Pl.'s Dep. at 268:13-19.  This provision is materially-identical to the one upheld in Badgett and is therefore reasonable.  Because Virginia does not bar contractual limitations clauses for IIED claims, Plaintiff entered into an enforceable agreement to bring his IIED claim within 6 months after the event forming the basis for said claim.

24

The latest possible event "forming the basis of" Plaintiff's IIED claim – the alleged incident with TJ Collins – occurred on March 7, 2013.  Plaintiff filed his initial complaint 1 ½ years later, on July 15, 2014.  Therefore, Plaintiff's IIED claim is time-barred and this Court should enter judgment in favor of FXFI on that claim.

    2.      Plaintiff did not state a claim for IIED because the conduct of which <u>he complains is neither "intentional or reckless" nor "extreme and outrageous</u>."

To establish an actionable claim of IIED, Plaintiff must allege and prove conduct that is "beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 27 (1991).  Plaintiff did not and cannot do so.  Instead, Plaintiff complains of conduct that, even if true, is merely distasteful and crass.

IIED claims carry potential for great abuse.  Such claims are "not favored in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotion in the absence of accompanying physical injury." *Supervalu, Inc. v. Johnson*, 276 Va. 356, 370 (2008); *Russo*, 241 Va. at 26; *Ruth v. Fletcher*, 237 Va. 366, 373 (1989).  For this reason, courts have "tightly controlled" such claims, <u>Beardsley v. Isom</u>, 828 F. Supp. 397, 401 (E.D.Va. 1993) (quoting *Ruth*, 237 Va. at 373), and are admonished to prohibit recovery in all doubtful cases. *Ruth*, 237 Va. at 373 (quoting *Bowles v. May*, 159 Va. 419, 438 (1932)) (stating that "because of the fact that fright or mental shock may be so easily feigned without detection, the court should allow no recovery in a doubtful case").  This is especially true in instances where, as here, Plaintiff seeks recovery absent any objective physical injury.  Indeed, even Plaintiff's experts were unable to establish any objective physical injury caused by any conduct related to this case.

To establish a *prima facie* case of intentional infliction of emotional distress under Virginia law, a plaintiff must prove that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the

wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Womack v. Eldridge*, 215 Va. 338, 342 (1974). Plaintiff cannot establish the first or second elements as a matter of law.

### a. Plaintiff cannot establish the "intentional or reckless" element.

Virginia law is clear that the "intentional or reckless" element precludes recovery in all but the most egregious circumstances. Judged against this standard, Plaintiff's allegations fail as a matter of law.

In Ruth, the evidence adduced at trial demonstrated that the defendant convinced the plaintiff she was pregnant with his child even though she had sexual intercourse with two men during the week of conception; she persuaded the plaintiff's parents that the child was their grandchild; she strenuously objected to the plaintiff's requests to confirm the identity of the child's natural father through blood tests; she caused the plaintiff to pay monthly child support in exchange for visitation rights; she never expressed any doubt about the identity of the child's natural father even though a subsequent chance encounter with the other possible father allowed her to realize she incorrectly identified the plaintiff; she did not inform the plaintiff of this realization until she could afford to petition for adoption several years later; she fostered a bond of love and affection between the plaintiff and the child; and she told the plaintiff he could no longer see the child after she got married and persuaded her husband to file a petition for adoption. *Ruth*, 237 Va. at 368-71.

Despite this evidence, the Court held that the defendant's conduct was not sufficiently "intentional or reckless." *Id*. at 373. In order to prevail, the plaintiff needed to allege and prove that the defendant "set out to convince [the plaintiff] that the child was his, and, to cause him to develop a loving relationship with the child so that in the end she could hurt [the plaintiff] by

26

taking the child away from him forever." *Ruth*, 237 Va. at 373. Essentially, the defendant needed to intentionally and deceptively tear away from the plaintiff all which he held dear. It is patently clear that Plaintiff's allegations in this case fall far short of that mark.

Because the circumstances here are much less egregious than those which the Ruth Court rejected as legally insufficient, Plaintiff's IIED claim fails as a matter of law. Plaintiff's allegations evince crass but certainly not "intentional or reckless" conduct which largely parrots his other claims. Although crass and unpleasant workplace encounters are commonplace, and although these encounters may often result in hurt feelings, humiliation, self-doubt, and other unpleasant emotions, such encounters do not create entitlement for intentional infliction of emotional distress. *See*, *e.g., Talbert v. City of Charlottesville*, 45 Va. Cir. 142, 146-47 (Va. Cir. Ct. 1998); *Johnson v. Plaisance*, 25 Va. Cir. 264, 268 (Va. Cir. Ct. 1991); *Ellison v. St. Mary's Hosp.*, 8 Va. Cir. 330, 332 (Va. Cir. Ct. 1987).

b. *Plaintiff cannot establish the "outrageous and intolerable" element.*

Even if this Court is willing to accept that Plaintiff's allegations somehow satisfy the strict "intentional or reckless" element, he still must satisfy the even more demanding "outrageous and intolerable" element. *See Beardsley*, 828 F. Supp. at 400 (discussing the difficulty of adducing proof to satisfy "outrageous and intolerable" element). Plaintiff cannot establish that any conduct in this case was sufficiently "outrageous and intolerable."

In Russo, the defendant's tortious and even criminal conduct was insufficient to satisfy the "outrageous and intolerable" element. *See Russo*, 241 Va. at 27. In fact, this element is not even satisfied where the allegations and facts demonstrate that the defendant specifically intended to inflict emotional distress or acted with malice. *See id*. Rather, to satisfy this element, a plaintiff must demonstrate that the defendant's conduct is "so outrageous in character,

27

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *See id.*

Not surprisingly, courts routinely reject such claims on grounds that the conduct alleged is not so outrageous and intolerable so as to offend generally accepted standards of decency and morality. *See, e.g., Talbert*, 45 Va. Cir. at 146-47; *Plaisance*, 25 Va. Cir. at 268; *Ellison*, 8 Va. Cir. at 332 (stating that "[t]o make such actions as plaintiff alleges actionable would be to create chaos in the work place.  Workers must not be so thin-skinned as to allow themselves to be unnerved by the rough and tumble of everyday life").  In fact, "[i]nsensitive and demeaning conduct," including verbal abuse, is insufficient to state a claim for IIED.  *See Harris v. Kreutzer*, 271 Va. 188 (2006).  Plaintiff's claims obviously fail to meet this elevated burden.

Plaintiff's claims evince no more than the crass and insensitive conduct that, although certainly detestable, amounts to no more than the "rough and tumble of everyday life."  Plaintiff alleges a series of crude comments bolstered only by a single allegation of a physical altercation comprising another individual grabbing his arm and speaking to him in a tone he does not prefer. Such allegations are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *See Russo*, 241 Va. at 27.  Therefore, even if Plaintiff's allegations are true – which they are not – he cannot successfully underpin his IIED claim with them.

## **CONCLUSION**

For the foregoing reasons, each of Plaintiff's claims against FXFI, Inc. should be dismissed with prejudice.  Defendant FXFI, Inc. respectfully asks this Court to grant this Motion for Summary Judgment, and to dismiss Plaintiff's case in its entirety with prejudice. Defendant also asks this Court to award FXFI, Inc. its costs and attorneys' fees.

28

Dated: <u>May 14, 2015</u>          Respectfully Submitted,

**FEDEX FREIGHT, INC.**

By    /s/ *Jimmy F. Robinson, Jr.*
Jimmy F. Robinson, Jr., Esquire
Virginia State Bar Number 43622
jimmy.robinson@ogletreedeakins.com
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
*Counsel for Defendant*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Tel.:    (804) 663-2336
Fax:    (855) 843-1809

29

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May, 2015, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff:

Scott Gregory Crowley, Esquire
Virginia State Bar Number 31216
scrowley@crowleyandcrowley.com
Overlook II Building
4870 Sadler Road, Suite 300
Glen Allen, VA 23060
Tel.:    (804) 205-5010
Fax.:    (804) 205-5001

*Counsel for Plaintiff*

**FEDEX FREIGHT, INC.**

By    /s/ *Jimmy F. Robinson, Jr.*
Jimmy F. Robinson, Jr., Esquire
Virginia State Bar Number 43622
jimmy.robinson@ogletreedeakins.com
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
*Counsel for Defendant*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Tel.:    (804) 663-2336
Fax:    (855) 843-1809

21205623.5

30