

FILED

MAY 2 8 2015

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

PHILIP D. ATKINS,

     Plaintiff,

v.                            Civil Action No.  3:14cv505

FEDEX FREIGHT, INC.,

     Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S PARTIAL MOTION TO DISMISS (Docket No. 26). For the reasons set forth below, this motion will be granted in part and denied in part.

## I.  BACKGROUND

### a.  Factual Background

The facts are recited as alleged.  The plaintiff is given the benefit of all permissible inferences.

Plaintiff Philip Atkins ("Atkins") was employed by Defendant FedEx Freight, Inc. ("FedEx") beginning on October 26, 2009 as a Supplemental City Driver.  Second Amended Complaint ("SAC") (Docket No. 20) at ¶4.  He was promoted to City Driver during the course of his employment.  Id.  The allegations in the SAC begin in August of 2012 when, according to Atkins, "two African American truck drivers were discharged from employment

as truck drivers for FedEx" and that, following the incident, the two fired drivers and a white supervisor "informed Atkins that management had a 'hit list' of other African American Drivers [that] terminal management wanted to fire, which included Atkins." Id. at ¶5.   He was also informed by two clerks in the Richmond Service Center office "in mid-October 2012" that "service center management was searching for a way to fire him." Id. at ¶6.

On October 17, 2012, Kevin Usilton, an Operations Manager, notified Atkins that he had committed a Compensated Time Violation on October 16, 2012 "by taking a bathroom break without notifying dispatch of the occurrence." Id. at ¶7. Atkins alleges that such notification had never been required previously and that failure to give such a notification had never been considered a violation of company time policy. Id. Atkins was warned that this offense could result in his termination. Id. at ¶8.   Sometime during the week following Atkins' conversation with Usilton, Atkins reports that "three Caucasian employees...who were aware of Atkins' Compensated Time Violation informed him that they had been similarly charged with Compensated Time Violations for taking unauthorized breaks...[and] indicated that they were issued mere verbal warnings." Id. at ¶9.

"Within five days" of his conversation with Usilton on October 17, 2012, Atkins was advised by an African American supervisor to contact Charles Pullen, who was FedEx's District Human Resources manager.   Id. at ¶10.   Atkins did so and "advised Pullen that he had requested training for time reporting in order to avoid...policy infractions...[but] was informed...that FedEx couldn't train him."   Id.

On or about October 31, 2012, Atkins received the official Corrective Action Form noting the discussed Compensated Time Violation, charging him with taking unauthorized lunches, and informing him that "management recommended Atkins' termination from employment."   Id. at ¶¶ 12-13.   Atkins contested the notice.   Id. at ¶13.   In the week following the issuance of the Corrective Action Form, Pullen "called Atkins to advise that FedEx could not terminate him for the purported Compensated Time Violation."   Id. at ¶14.   During that conversation, Atkins informed Pullen that management had recommended his termination and that "management had charged three Caucasian drivers with similar time violations, but had issued mere verbal warnings instead of employment termination."   Id.   Pullen said that he would investigate.   Id.

On November 6, 2012, Ike Fanz, a FedEx Service Center Manager, "approached Atkins and attempted to intimidate him into admitting wrongdoing."   Id. at ¶15.   Atkins refused and Fanz

3

stated that, while he wanted to fire Atkins, Fanz would merely suspend him.  Id.  On November 9, 2013, Fanz informed Atkins that he would be suspended without pay for three days.  Id. at ¶16.  Atkins contacted Pullen, who advised him to appeal his suspension.  Id. at ¶17.  Atkins did appeal and, following his suspension, returned to work "under probation" while the appeal was pending.  Id.  He further states that Pullen "instructed the FedEx human resources officer of the Richmond Service Center, Adrian Prentiss, to investigate Atkins' allegations of race discrimination" while Atkins' appeal was pending.[1]  Id. at ¶18.

Atkins next alleges that, while his appeal was pending, he "suffered several incidents of harassment from Terrance Collins, the Assistant Service Center Manager."  Id. at ¶19.  These include incidents wherein Collins "confronted Atkins with a menacing demeanor, threatening to 'split and peal [sic] [his] head open like a pineapple with a machete'", informed Atkins that he was "out to get him", mocked Atkins' hairstyle, informed Atkins that he "had previously beat a discrimination case...and that the company would fly its lawyers in on a private jet to defend him", told him not to "think about snitching," and showed

---

[1] Atkins states that he "made his discrimination claims to Pullen and Prentiss", but it is not clear when the claims, if any, were made to Prentiss.  SAC at ¶21.  The SAC states that Pullen asked Prentiss to "investigate Atkins' allegations of race discrimination", but does not mention any conversation between Prentiss and Atkins wherein Atkins complains of racial discrimination directly to Atkins.  Id. at ¶18.

Atkins a revolver that Collins kept in his glove compartment "in case black guys like you with their dreadlocks run up on [him]." Id. at ¶¶ 19-21.

"Sometime in December 2012" Atkins met with Collins and Michael Capps, who was an Operations Manager with FedEx. Id. at ¶23. Atkins requested to be considered for an open position and was informed that he was not eligible to apply for the position because he was still on probation, as his appeal was still pending. Id. The three then discussed Atkins' appeal briefly and Atkins informed Collins and Capps that "he was bothered by the situation because he felt he had been discriminated against and harassed by receiving the corrective action that had not been issued to other drivers who committed the same action." Id. at ¶24. Collins told Atkins that he was free to leave FedEx and get a job elsewhere if he felt that way. Id. at ¶25. Atkins then started to leave the office, but was stopped by Capps who "grabbed the handle to hold [the door] shut." Id. "Atkins felt as if Capps were provoking him...[but] made no comments or gestures toward Capps." Id. at ¶26. It appears that Capps then told Collins that he felt threatened by Atkins and Collins replied that Capps should "put it on paper, and [Atkins would be]...gone." Id. at ¶26.

On March 5, 2013, Atkins was informed that the appeal had been resolved in his favor and that he would receive three days

of back pay from his suspension.[2]   Id. at ¶27.   According to
Atkins, "[t]he customary decision time for an appeal was 10
days, but [his] decision wasn't made for nearly four months."
Id. at ¶22.   During those four months, Atkins was not eligible
for many promotions and transfer opportunities because he was on
probation.   Id.   On March 7, 2013, Collins approached Atkins,
"chided him in the presence of other employees for prevailing in
his appeal...[and] grabbed...Atkins by the arm and said
menacingly, 'this isn't over.'"   Id. at ¶28.   Atkins did not
return to work after March 7 and "applied for and was awarded
long term disability benefits."   Id. at ¶32.   On March 11, 2013,
Atkins complained about his March 7 encounter with Collins in a
written statement to FedEx.   Id. at ¶29.   Atkins was interviewed
by a FedEx employee about the incident on March 12, 2013 and
"informed [that employee] of the race discrimination behind the
termination resulting from the Compensated Time Violation."[3]   Id.
at ¶31.

---

[2] The SAC does not disclose what the grounds of the appeal or the
reversal were.

[3] Although Atkins claims to have been terminated from his
employment at FedEx in several places in the SAC, the facts
alleged therein do not support that statement.   Rather, it
appears that Atkins was suspended without pay for three days as
a result of the Compensated Time Violation.

**b.   EEOC Charge**

On March 20, 2013, Atkins filed a Charge of Discrimination against FedEx with the Equal Employment Opportunity Commission. Docket No. 27-1 at 3.[4]   In that charge, Atkins checked the boxes for discrimination based on race, retaliation, and disability.[5] Id.  His statement of the charge reads as follows:

> 1. I was hired on October 26, 2009, as a Supplemental City Driver. I progressed to City Driver. On November 12, 2012, I received a critical warning and was suspended for three days. This disciplinary action resulted from an incident that occurred on October 16, 2012. On November 26, 2012, I filed an internal appeal on the disciplinary action. Because of the disciplinary action on my record, I could not apply for promotions for one hundred and eighty days (180). In December 2012, I could not apply for the position of Road Driver (Maryland) and Senior Driver (Richmond). Also in December 2013, I was passed over for better paid road assignments. On March 5, 2013, I was notified that my that my [sic]

---

[4] The Court can consider this document when ruling on a Motion to Dismiss because it is integral to, and explicitly relied upon, in the SAC.  Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.)  Further, while Atkins did not attach the EEOC Charge of Discrimination to his Complaint, FedEx is entitled to attach the document to its Motion to Dismiss because it was referred to in the SAC.  Gasner v. Cnty. Of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[W]hen the plaintiff fails to introduce a pertinent documents as part of his complaint, the defendants may attach the document to a motion to dismiss without converting the motion to one for summary judgment.")

[5] Atkins does not make any claims based on disability in any of his complaints in this Court.

critical warning and suspension was reduced
to a written warning and I was compensated
for the suspension. On March 7, 2013, I was
physically assaulted and verbally threatened
by Terrence Collins, Assistant Service
Center Manager. On March 8, 2013, I filed a
complaint against Mr. Collins. On March 11,
2013, I met with Norm Cullens, Security
Officer, and Adrianne Prentiss, Human
Resources Representative, regarding my
complaint against Mr. Collins. On March 12,
2013, my physician took me out of work. On
March 13, 2013, I requested Family and
Medical Leave. On March 16, 2013, Mr.
Cullens stated the investigation in to my
complaint concluded to be false. Also on
March 18, 2013, Kim Morris, Director, Human
Resources, informed me that my short term
disability was pending awaiting a statement
from my physician.

2.   On October 17, 2012, Ike Fanz, Service
Center Manager, stated that he had
recommended that I be discharged for
compensated time violation that occurred on
October 16, 2012.

3.   I believe I was disciplined more
severely than my White co-workers, and
passed over for better paid road assignments
because of my race, Black, in violation of
Title VII of the Civil Rights Act of 1964,
as amended. I also believe I was retaliated
against by being physically assaulted and
verbally threatened in violation of Section
704a of the same Act, and in violation of
the Americans with Disabilities Act of 1990,
as amended.

Id. at 3-4.

   c.   **Complaint and Procedural Background**

   On August 6, 2014, Atkins filed his initial Complaint.
Docket No. 4. The Complaint was amended twice and the current

operative complaint is the SAC.    Docket No. 20.    The SAC presents four counts against FedEx.    Count I is a claim for Race Discrimination in Violation of Title VII.    SAC at 9.    In this count, Atkins claims that FedEx subjected him to "discrimination in the terms and conditions of his employment on account of his African American race...by subjecting [him] to more severe employment discipline for engaging in conduct...for which Caucasian employees were not terminated when they committed the same violation."    Id. at ¶42.[6]  A claim of this sort is commonly referred to as a "disparate discipline" claim.

Count II alleges a claim of retaliation in violation of Title VII.  Id. at 10.    Atkins claims that, "[b]y subjecting [him] to discrimination in discipline, physical assault and inflicted on him emotional distress and mental anguish [sic]...in direct response to his complaining of race discrimination, FedEx retaliated against him for engaging in protected activity."  Id. at ¶44.

Count III alleges a claim of race harassment in violation of Title VII.   Id. at 10.    Under this Count, Atkins alleges that FedEx subjected him "to pervasive and severe harassment and a hostile work environment from his superiors at the Richmond Service Terminal, on account of his African American race."  Id.

---

[6] Again, Atkins claims he was terminated as a result of his Compensated Time Violation, but it is clear from the SAC that he was only suspended for three days without pay.

at ¶46.   Claims of this sort are referred to as "hostile work environment" claims.

Finally, in Count IV, Atkins makes a claim of Intentional Infliction of Emotional Distress, in violation of Virginia Law. Id. at 11.

FedEx seeks dismissal of Counts II and III based on Fed R. Civ. P. 12(b)(1) and dismissal of Count II under Fed. R. Civ. P. 12(b)(6).  Id.  This motion is ripe for decision.

## DISCUSSION

### I.   The Rule 12(b)(1) Motion to Dismiss (Failure to Exhaust Remedies)

FedEx firsts seeks dismissal of Counts II and III under Fed. R. Civ. P. 12(b)(1).   It alleges that Atkins has failed properly to exhaust his remedies, as is required to confer subject matter jurisdiction on this Court in Title VII cases. This is so, says FedEx, because the charges of retaliation (Count II) and hostile work environment (Count III) could not conceivably be thought to fall within the charges as described in Atkins' EEOC charge.

### b.   Standard

If a federal court finds that is does not have subject matter jurisdiction over a case or controversy, it must dismiss the motion.   Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

Thus, whether there is subject matter jurisdiction, as raised in the Rule 12(b)(1) motion, must be addressed first.

"Before a Title VII plaintiff can bring a formal suit, he must file an administrative charge with the Equal Employment Opportunity Commission [EEOC].  This charge frames the scope of future litigation.  'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"  Chacko v. Patuxent Institution, 429 F.3d 505, 506 (4th Cir. 2005) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 964, 963 (4th Cir. 1996)).  "If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'"  Id. at 509 (quoting Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)).  For that reason, the "allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."  Evans, 80 F.3d at 962-63.  "At the same time, however, lawyers do not typically complete the administrative charges, and so courts construe them liberally."  Chacko, 429 F.3d at 509.

It is "clear that the factual allegations made in formal litigation must correspond to those set forth in the

11

administrative charge." Id. In other words, "[a] claim will...typically be barred if the administrative charges alleges one type of discrimination – such as discriminatory failure to promote – and the claims encompasses another type – such as discrimination in pay and benefits." Id. Additionally, "the allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." Id.

Thus, "[a] charge is acceptable only if it is sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Baiden-Adams v. Forsythe Transp., Inc., 969 F. Supp. 2d 422, 427 (E.D. Va. 2013) (internal quotations omitted). However, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." Id. (emphasis added) The test for determining whether the administrative charge and the complaint are "reasonably related" is whether or not a "reasonable investigation of [the] administrative charge would have uncovered the factual allegations set forth in formal litigation." Chacko, 429 F.3d at 509.

> **b.   Retaliation – Count II**
>
> **(i) Parties' Arguments**

Although FedEx acknowledges that:  (1) Atkins' EEOC charge states that he was retaliated against; and (2) he checked the box marked "retaliation" on the EEOC charge form, Atkins' EEOC charge was insufficient to exhaust any retaliation claim because it failed to identify "any protected activity whatsoever...[and], even if Plaintiff identified a protected activity in his EEOC charge, his subsequent retaliation claim is underpinned by the kind of 'broader pattern of misconduct' prohibited by the Fourth Circuit in Chacko."  Docket No. 27 at 13 (citing Chacko, 429 F.3d at 509).

FedEx also contends that no reasonable investigation into Atkins' EEOC charge, as presented, would have uncovered the events on which he bases his retaliation claim in the SAC.  Id. On this point, FedEx acknowledges that Atkins' EEOC charge states that he was "retaliated against by being physically assaulted and verbally threatened", but argues that Atkins "presently underpins his retaliation claim with a broader set of facts...[that were] never presented to the EEOC [namely]: (a) discrimination in discipline; (b) the infliction of emotional distress and mental anguish; and (c) a complaint of race discrimination."  Id. at 14.  Thus, says FedEx, Atkins "presented the EEOC with neither the alleged protected activity nor most of the alleged adverse employment actions about which he now complains."  Id.

13

Atkins does not directly address Count II in his response. Docket No. 30 at 4. Instead, he makes the conclusory assertion that the "claims in this litigation are entirely within the scope of his original charge [and a]ll of the claims he is bringing to this Court would have been uncovered in a reasonable investigation of the charge." Id. at 7.[7]

### (ii) Analysis

"A plaintiff must exhaust administrative remedies to bring suit on a claim of retaliation....One means of meeting the exhaustion requirement for a retaliation claim is by filing a sufficient charge specifically identifying the retaliation. A plaintiff may also bring a claim of retaliation not explicitly contained in the EEOC charge where that claim of retaliation was a 'kind of discrimination like or related to allegations contained in the charge or growing out of such allegations during the pendency of the case before the commission.'" Baiden-Adams, 969 F. Supp. 2d at 431 (quoting Johnson v. Portfolio Recovery Associates, LLC, 682 F. Supp. 2d 560, 573 (E.D. Va. 2009) (emphasis added)).

Atkins' EEOC charge states that he "believe[d that he] was retaliated against by being physically assaulted and verbally

---

[7] This kind of broad statement is not only poor advocacy, but it also poses the risk that the client's complaint can be dismissed. But, because the EEOC charge is to be liberally construed, the Court must make the requisite analysis, notwithstanding the poor advocacy.

threatened"; describes the course of his disciplinary action and appeal; and mentions the March 7, 2013 incident in which Atkins states he was "physically assaulted and verbally threatened by Terrance Collins." Docket No. 27-1, at 3-4. Atkins also checked the box for discrimination based on retaliation. Id. at 3. However, the EEOC charge does not contain any allegation of relevant protected activity.[8]

In the SAC, Atkins alleges that FedEx "subjected [him] to discrimination in discipline, physical assault and inflicted on him emotional distress and mental anguish...in direct response to his complaining of race discrimination." SAC at ¶44. He also identifies four instances of possible protected activity in the SAC. First, Atkins states that he spoke with Charles Pullen and told him that, while terminal management had recommended Atkins' termination, management "had issued mere verbal warnings instead of employment termination" for three Caucasian drivers with similar time violations. Id. at ¶14. Second, Atkins states that, "during the pendency of the appeal, Pullen instructed...Adrian Prentiss to investigate Atkins' allegations

---

[8] The EEOC charge does state that Atkins filed a complaint against Collins on March 8, 2013 and that he met with FedEx investigators regarding that complaint. However, because that protected activity occurred after the "retaliation" of which Atkins' complains, it is not sufficient to establish an allegation of protected activity for the purpose of this motion. Docket No. 27-1 at 3-4.

of race discrimination." Id. at ¶18. And, he asserts that,
while the appeal was pending Collins harassed him, inter alia,
by mocking Atkins' hairstyle, mentioning that he had beat a
discrimination case previously, and showing Atkins a pistol that
he kept "in case black guys like you with their dreadlocks run
up on" me. Third, Atkins alleges that he told Collins in
December 2012 that he "was bothered by [the disciplinary]
situation because he felt that he had been discriminated against
and harassed by receiving the corrective action." Id. at ¶24.
Finally, Atkins states that he "gave a written statement to
FedEx about the...physical altercation by Collins" and "informed
[Norm Cullen] of the race discrimination behind the termination
resulting from the Compensated Time Violation" on March 11-12,
2013, after he left work at FedEx. Id. at ¶29-30.

Whether the EEOC charge can be said to encompass the
retaliation allegations in the SAC is a close call. However,
careful comparison of the EEOC charge with the SAC reveals that
the allegations in the EEOC charge are sufficiently related to
those in the SAC that a reasonable investigation into the EEOC
charge would have uncovered the retaliation of which Atkins
complains in the SAC. The EEOC charge explicitly mentions
Atkins' complaints about discriminatory discipline and promotion
practices at FedEx, his March 7 altercation with Terrance
Collins, and that he spoke with Adrianne Prentiss regarding his

16

March 11 complaint.  Docket No. 27-1.  If the EEOC spoke with Mr. Prentiss, it is reasonable to believe that the topic of Atkins' complaints of racial discrimination would come up in the EEOC investigation because Prentiss investigated those complaints at the behest of Pullen.  This would provide the EEOC with the alleged protected activity.  Also, at least one form of the retaliation that Atkins alleges in his complaint (the March 7 altercation with Collins) is explicitly included in the EEOC charge as well.

Thus, the EEOC charge provides sufficient information to allow a reasonably thorough EEOC investigator to uncover the basis of Atkins' retaliation allegations.  Therefore, FedEx's Rule 12(b)(1) motion to dismiss Count II of the SAC for lack of subject matter jurisdiction will be denied.

### c.   Racial Harassment/Hostile Work Environment [Count III]

#### (i)  Parties' Arguments

FedEx argues that Count III must be dismissed for lack of subject matter jurisdiction because Atkins' "EEOC charge alleged only race discrimination based on disparate treatment, retaliation based on race, and retaliation pursuant to the ADA...[and] was entirely devoid of any reference to harassment or a hostile work environment and lacked any of the myriad factual allegations underpinning his present race harassment claim."  Docket No. 27 at 10.  In short, FedEx alleges that

Atkins' claims of racial harassment in the form of a hostile
work environment in Count III are predicated not on what Atkins
believes was discriminatory discipline, but instead only on the
pattern of interactions with Collins and other managers which
are detailed in the complaint.  Because the EEOC charge does not
allege that these interactions took place, and only mentions
Atkins' race in relation to the discipline he received and
retaliation for his complaints to Pullen about racial
discrimination, FedEx argues that the EEOC charge cannot be said
to encompass Atkins' racial harassment/hostile work environment
claim and thus this Court does not have subject matter
jurisdiction over it.

Atkins opposes FedEx's motion.  In doing so, he argues that
"the allegations of race discrimination in the charge are
sufficiently related to race harassment or hostile work
environment for [Count III] to proceed to litigation."  Docket
No. 30 at 6.  He points out that his EEOC charge alleges that he
was "disciplined more severely" than his white co-workers and
that he was "retaliated against by being physically assaulted
and verbally threatened" and he argues that these statements
were related enough to the factual allegations involving Collins
and other managers that the allegations in the SAC would have
been developed by a reasonable investigation into the EEOC
charge.  Id.

18

### (ii) Analysis

"The Fourth Circuit has consistently held that a plaintiff's claim exceeds the scope of the EEOC charge where the charge alleges one basis of discrimination and litigation introduces another independent basis." Baiden-Adams, 969 F. Supp. 2d at 428. To that end, the Fourth Circuit and several district courts have found that EEOC charges that allege only disparate treatment discrimination or retaliation are not reasonably related to a charge of harassment and hostile work environment such that an investigation of the EEOC charge would uncover evidence of the harassment or hostile work environment claim. For example, in Taylor v. Virginia Union University, the Fourth Circuit upheld the dismissal of the plaintiff's sexual harassment claim, finding that, though the EEOC charge described her boss calling her at home, touching her arm, and telling her that he hired her because he liked her, such facts did not sufficiently allege sexual harassment. 193 F.3d 219, 239 (4th Cir. 1999) (en banc)(abrogated on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 98-99 (2003)). Further, the Court of Appeals found that "even construing [plaintiff's EEOC charge liberally]", she did not exhaust her sexual harassment claim because the actionable portion of her charge only related to gender discrimination for a failure to promote. Id. See also Baiden-Adams, 969 F. Supp. 2d at 429-30 (granting a motion

19

to dismiss for failure to exhaust the plaintiff's sexual harassment claim when the EEOC charge alleged that she was discharged due to race and sex "after asking about a pay raise"); Logan v. Colonial Williamsburg Hotel Properties, 941 F. Supp. 60, 61 (E.D. Va. 1996) (granting a motion to dismiss for failure to exhaust when the plaintiff's EEOC charge claimed sex discrimination but the plaintiff sued on a sexual harassment theory).

Atkins' EEOC charge alleges that he "received a critical written warning and was suspended for three days", that he was "passed over for better paid road assignments", that he was "physically assaulted and verbally threatened [on March 7, 2013] by Terrance Collins;" and that he filed a complaint about the March 7, 2013 interaction with Collins.  Docket No. 27-1 at 3. It also alleges that Atkins believed that he was disproportionately disciplined and not promoted because of his race and that he was physically assaulted and verbally threatened in retaliation.  Id. at 4.  The EEOC charge does not describe any of the other interactions between Atkins and Collins that he alleges in the SAC, nor does it allege that he was suffering from a racially hostile work environment. Additionally, the only explicit mention of race in Atkins' EEOC charge arises in the context of discriminatory discipline and promotion by FedEx.

20

That, however, does not end the inquiry because it is next necessary to apply the so-called "reasonable investigation test" for assessing the relation between charges presented to the EEOC and those made in a complaint filed in court.  That test is easily articulated, but is somewhat difficult of application.  But, what seems to be clear is that charges presented to the EEOC are to be judged with lenity when making that comparison.  Here, Atkins' EEOC charge outlines a hostile work environment, but does not specifically link race to the environment described.  However, the SAC is laden with recitations of racial slurs and disparate discipline said to have been racially based.  And, there is the allegation that management wanted to get rid of Atkins, as it had other black drivers.  A reasonable investigation of Atkins' specific charges would necessarily have focused on the environment in which Atkins worked and in which his more specific EEOC charges arose.  Consequently, based on the extensive allegations of race-based employment actions and other race-based conduct in the EEOC charge and the allegations of workplace hostility in the SAC, it is reasonable to expect that the EEOC investigation would have unearthed the hostile work environment (if there was one).

Therefore, the hostile work environment claim in the SAC is reasonably related to the EEOC charge, and thus there is subject

matter jurisdiction.   Hence, the motion to dismiss Count III under Rule 12(b)(1) will be denied.

## II.   The 12(b)(6) Motion to Dismiss Atkins' Retaliation Claim

Having found that there is subject matter jurisdiction over Count II (the retaliation claim), it is appropriate now to consider the Rule 12(b)(6) motion filed by FedEx.   Docket No. 27 at 14.

### a.   Standard

Rule 12(b)(6) permits a party to move for dismissal of a claim if the complaint fails "to state a claim upon which relief can be granted."   Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim" illustrating that the pleader is entitled to relief.   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Courts are to assume that all well-pled allegations in a Complaint are true, and must deny a Rule 12(b)(6) motion to dismiss where the well-pled allegations state a plausible claim for relief.   Id. at 679.   A claim is "plausible" when the plaintiff pleads facts sufficient to allow the court to draw the

reasonable inference that the defendant is liable for the alleged misconduct. Twombly, 550 U.S. at 556. A court should grant a motion to dismiss where the allegations are nothing more than legal conclusions, or where they permit a court to infer no more than a possibility of misconduct. See Iqbal, 556 U.S. at 678-79.

Under the Iqbal and Twombly standard, Atkins bears the burden of alleging facts sufficient to state all elements of his retaliation claim.[9] The elements of a retaliation claim under Title VII are: "(1) that [the plaintiff] engaged in protected activity, (2) that an adverse employment action was taken against [the plaintiff], and (3) that there was a causal link between the protected activity and the adverse employment action." Laughlin v. Metropolitan Washington Airports Authority, 149 F.3d 253, 258 (4th Cir. 1998) (citing Hopkins v. Baltimore Gas & Elec. CO., 77 F.3d 745, 754 (4th Cir.), cert. denied, 519 U.S. 818 (1996)).

---

[9] The parties disagree about the appropriate standard to apply to FedEx's 12(b)(6) motion. However, Atkins' argument is based on Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), an out-of-date case that has been effectively overruled by the Supreme Court. See Francis v. Giacomelli, 588 F.3d 186, 193 ("The standard that the plaintiffs quotes from Swierkiewicz, however, was explicitly overruled in Twombly, 550 U.S. at 562-63 (noting that this standard, first articulated in Conley v. Gibson, 355 U.S. 41, 45046 (1957), 'has earned its retirement.'")).

### b. Analysis

FedEx argues that Atkins "fails to link his alleged protected activity to the alleged adverse employment actions to which he was subjected...[and therefore] has not established the causation element of his retaliation claim." Docket No. 27 at 15. Although FedEx is correct in stating that Atkins does not explicitly allege a causal link between his protected activity and the retaliation of which he complains, it ignores that Atkins has alleged several facts that could reasonably support a causal connection as to some of his retaliation allegations in Count II.

Atkins has alleged facts sufficient to support a causal allegation between his protected activity and his physical altercation with Collins. Atkins also has offered "additional evidence" in the SAC that allows for a reasonable inference of a causal connection between the alleged protected activity and the alleged retaliation. Atkins has explicitly tied his altercation with Collins to Collins' anger with Atkins "for prevailing in his appeal and being reimbursement [sic] his lost wages." SAC at ¶28. While the SAC does not assert specifically that the appeal was premised on a complaint of race discrimination, the SAC does explicitly allege that Atkins complained to Collins about what Atkins believed was racial discrimination a few months before the altercation. The SAC also alleges that

24

Charles Pullen advised Atkins to appeal his three-day suspension in the days following Atkins' conversation with Pullen in which the two men discussed disparate discipline. This, if proved, supports an inference that the appeal was, in fact, race-based. Further, the SAC alleges that Atkins spoke with Collins and informed Collins that he felt he "had been discriminated against and harassed by receiving the corrective action." SAC at ¶24. Collectively, these facts reasonably support the inference that there was a causal connection between Atkins' protected activity (i.e., speaking with Pullen and Collins) and the behavior he complains of (being assaulted by Collins). Thus, the motion to dismiss Atkins' retaliation claim based on the March 7, 2013 altercation with Terrance Collins is denied.

With respect to Atkins' allegations of retaliatory discipline, FedEx is correct is asserting that none of the Atkins' protected activity occurred before he received the initial Corrective Action Form on October 31, 2012. SAC at ¶12. However, the SAC alleges that Atkins complained about racial discrimination to Charlie Pullen "sometime during the following week" [after Atkins received the Corrective Action Form and that this was before the final Corrective Action Form was issued on November 13, 2012. Thus, the SAC actually does allege a protected activity that occurred before the final Corrective Action Form was issued.

25

When Atkins received the original Corrective Action Form on October 31, 2012, it stated that "management recommended Atkins' termination from employment." Id. at ¶12. However, the SAC alleges that the discipline actually imposed as a result of the Corrective Action Form was a three-day suspension without pay. Id. at ¶16. The ultimate discipline was much less harsh than that recommended by management before Atkins' conversation with Pullen. Thus, if Atkins' protected activity had any effect whatsoever on his discipline, it was to reduce its severity significantly. For that reason, says FedEx, Atkins has alleged no plausible basis for causation as it relates to his claims of discrimination in discipline. FexEx offers no authority to support this contention. Nor could the Court locate any. Under the facts alleged in the SAC, it is plausible that the decision to impose even the lesser decision was casually connected to the protected activity. Therefore, the motion to dismiss Count II as to the retaliatory discipline will be denied.

Finally, the Rule 12(b)(6) motion will be granted in part with respect to Atkins' that "by subjecting him to...emotional distress and mental anguish,...in direct response to his complaining of racial discrimination...FedEx retaliated against him." While not elaborated on in Count II, the SAC elsewhere describes exactly what events caused Atkins' "emotional distress and mental anguish." In the SAC, Atkins alleges that his

26

emotional distress and mental anguish came "as a result of being placed on a 'hit list' over his race, being discrimination [sic] against on account of his race, retaliated against for complaining of the race discrimination, being harassed and finally being assaulted." Id. at ¶31.

As alleged in the SAC, Atkins was notified of his presence on management's "hit list" in August 2012. Id. at ¶5. That is well before the first alleged protected activity, which occurred in November 2012. Id. at ¶14. Thus, Atkins has not pleaded any causal connection between his protected activity and his presence on a "hit list" in August 2012. Accordingly, the motion to dismiss for failure to state a claim as to retaliation by the infliction of mental distress and emotional anguish by virtue of being placed on the so-called "hit list" will be granted. The remainder of Count II passes muster under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above, the DEFENDANT'S PARTIAL MOTION TO DISMISS (Docket No. 26) will be granted in part and denied in part.

It is so ORDERED.

/s/                    REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 28, 2015