**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| PHILIP D. ATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:14-CV-505 |
| | ) | |
| FEDEX FREIGHT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE, IN**
**WHOLE OR IN PART, THE DECLARATION OF PLAINTIFF PHILIP D. ATKINS**

Defendant FedEx Freight, Inc. (hereinafter "FedEx"), through undersigned counsel,

respectfully files this memorandum in support of its Motion to Strike, in Whole or in Part, the

Declaration of Plaintiff Philip D. Atkins (hereinafter "Atkins"). As explained below, Plaintiff

Atkins' Declaration must be excluded, in whole or in part, because it is largely unsupported by

personal knowledge, is based on hearsay, and is rife with speculation. As a result, this Court

should exclude, either in whole or in part, the Declaration of Plaintiff Philip D. Atkins.

### Introduction

Defendant filed its Motion for Summary Judgment and Memorandum in Support on May

15, 2015. ECF Nos. 39, 40. On May 28, 2015, Plaintiff filed his Memorandum of Law in

Opposition to Defendant's Motion for Summary Judgment. ECF No. 54. Attached to Plaintiff's

Opposition, and serving as it sole factual support, is the Declaration of Philip D. Atkins

(hereinafter "Atkins Declaration"). Numerous statements in the Atkins Declaration are

inadmissible because they do not comply with the procedural safeguards of Rule 56(e).

As discussed below, certain paragraphs and testimony contained in the Atkins

Declaration should be disregarded because they merely mimic Plaintiff's Second Amended Complaint, contain assertions which lack personal knowledge, are conclusory, are based on unsupported personal opinion or speculation, and are based on hearsay. These inadmissible statements must be stricken from the Affidavit and cannot be considered by the Court in ruling on Defendant's Motion for Summary Judgment.

**Argument**

### a.    The Requirements of Fed. R. Civ. P. 56 are Mandatory.

Rule 56(e) protects the integrity of affidavit testimony by requiring that an "opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). "These requirements are mandatory." *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 358 (4th Cir. 2007), citing Wright & Miller, Federal Practice and Procedure: Civil 3d § 2738 (2007).

### 1.    *Statements must be based on personal knowledge.*

Statements not based on personal knowledge must be stricken. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (stating that evidence submitted in opposition to summary judgment must be admissible and based on personal knowledge).

### 2.    *Conclusory or unsupported, self-serving statements must be stricken.*

Sham affidavits, not complying with the requirements of Rule 56(e), must be disregarded because "self-serving opinions without objective corroboration [are] not significantly probative." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); FED.R.CIV.P. 56(g) (requiring that "[i]f satisfied that an affidavit … is submitted in bad faith…, the court must order the submitting party to pay the other party the reasonable expenses, including attorney's

fees, it incurred as a result.").  Further, it is well-established that conclusory, self-serving statements must be stricken.  *See Cooper v. Nan Ya Plastics Corp.*, No. 4:04-21823, 2007 WL 2484126 (D.S.C. Jul. 20, 2006) (holding that conclusory, self-serving statements are "improper to consider in opposition to a motion filed pursuant to Rule 56" and must be stricken) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).

### 3.   *Statements That Are Not Facts Admissible in Evidence Must be Stricken.*

Rule 56(e) requires that affidavits set out "facts that would be admissible in evidence." The Rule does not allow affiants to use conclusory allegations and vague assertions as part of their affidavits.  Likewise, opinions, legal conclusions, irrelevant testimony, and hearsay are not facts that are admissible.

### 4.   *Hearsay Is Not Admissible and Must be Stricken.*

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to provide the truth of the matter asserted."  FED.R.EVID. 801(c). Under Rule 802, "hearsay is not admissible."  FED.R.EVID. 802.  Because Rule 56(e) requires that an affidavit "set out facts that would be admissible in evidence," hearsay must be stricken from the affidavit.  *See Maryland Highways Contractors Assn v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991) (hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment).

### b.   **The Atkins Declaration is Inadmissible and Must be Stricken.**

### 1.   *The Atkins Declaration is Pervaded by Inadmissible Hearsay.*

The following paragraphs contain inadmissible hearsay and should be stricken from the record and disregarded when considering Defendant's Motion for Summary Judgment:

(i)   Paragraph 5: "In or about August 2012, two African American truck drivers were discharged from employment as truck drivers for FedEx by management of the

Richmond Service Center. These two fired African American drivers, and a Caucasian supervisor, informed me that management had a "hit list" of other African American drivers terminal management wanted to fire, which included me.

(ii)     Paragraph 6: "In mid-October 2012, two female clerks in the Richmond Service Center office, one Caucasian and one African American, informed Atkins that service center management was searching for a way to fire him."

(iii)     Paragraph 8: "On October 17, 2012, Kevin Usilton, one of the City Driver Operations Manager [sic], who was my direct supervisor, informed me that he reviewed the Intermac [sic] records and observed that I had supposedly taken an unauthorized break during the prior afternoon. I explained to Usilton that the reason for this break was not unauthorized, but instead had been authorized by terminal dispatcher Randy Treslow [sic]. I explained had [sic] recently been assigned to deliver and pick up materials from McKesson Corporation, and I was not allowed to take a break while in the facility, nor allowed to leave the facility until my work was completed because it was a secure site. . I informed Usilton that he would see the same pattern for the six previous days."

(iv)     Paragraph 9: "Drivers are supposed to take a lunch break between the third and sixth hour of work, but while at McKesson, I could not take my lunch until later in the afternoon. I approached FedEx Treslow [sic] about the situation, and he advised me to clock out for lunch on my Intermac [sic] device during the normal lunch hour, but to continue working during that time, to take a lunch break while still on the clock later in the afternoon. Treslow [sic] said he had told that a white driver, Stephen Holland, to do the same thing when he ran the McKesson route."

(v)     Paragraph 10: "Treslow [sic] told me to ask Holland if I had any questions about taking my lunch break later than normal. I spoke with Holland and he confirmed that he also worked during lunch break and took his actual lunch later in the afternoon while still on the clock. Documents attached to this declaration show that I submitted information to explain the late lunch breaks.[1] I am also attaching Atkins my[2] [sic] cell phone records to Treslow [sic] during the relevant period when I asked Treslow [sic] how handle the lunch break issue."

(vi)     Paragraph 11: "Returning to October 17th, I asked Usilton whether I would be disciplined for the matter. Usilton replied that it could result in my termination."

(vii)     Paragraph 12: "Within a week after this, three white drivers (Holland and Todd Pendleton and David Jenkins), informed me that they had been disciplined by Usilton for same offense of taking unauthorized breaks (known as Compensated Time Violations). In each instance, Usilton had issued the white drivers mere verbal warnings."

---

[1] Plaintiff did not attach any documents to his Declaration.
[2] Plaintiff did not attach any cell phone records to his Declaration.

(viii)   Paragraph 13: "Within five days of the October 17, 2012 conversation with Usilton, an African American supervisor advised me to contact Charlie Pullen, FedEx's District Human Resources Manager in Atlanta, Georgia. I advised Pullen that had [sic] requested training for time reporting in order to avoid just such policy infractions. Ike Fanz, Service Center Manager, had advised me that Fed Ex couldn't train me."

(ix)   Paragraph 14: "Shortly thereafter, I was informed by one of the aforementioned terminal clerks that management was recommending my termination for the supposed Compensated Time Violation."

(x)   Paragraph 16: "I called Mr. Pullen to complain of the situation and stated that the discipline issued was racially-biased. Pullen told me that Fanz could not terminate me for the offense but I would more than likely be suspended and placed on critical probation. Pullen advised me to appeal the corrective action, and to call him when I received the appeal hearing phone call. When I received the appeal phone call, I was told the corrective action suspension/critical probation would be upheld. I contacted Pullen and he told me that he had the appeal transferred to Thomas Duncan in Arizona."

(xi)   Paragraph 17: "On November 6, 2012, Fanz approached me and pressed me to admit wrongdoing in the Compensated Time Violation. I explained that I had been instructed by Treslow and Holland to take his lunch breaks late. Fanz advised me that he had the power to terminate my employment, but instead would extend me "mercy and grace" by allowing me to remain employed. Fanz did not mention that Pullen already told him that I could not be fired for the Compensated Time Violation due to my request for training that Fanz refused to authorize."

(xii)   Paragraph 18: "On November 9, 2012, Fanz informed me that I was suspended three days without pay for the Compensated Time Violation. I subsequently received a formal Critical Written Warning on November 13, 2012. I appealed the Critical Written Warning."

(xiii)   Paragraph 20: "While awaiting decision in my appeal of the suspension, I was harassed on numerous occasions by Terrance Collins, the Assistant Service Center Manager. On more than one occasion, Collins, alone and in the presence of other employees, confronted me with a menacing demeanor, threatening to "to split and peel [my] head open like a pineapple with a machete" like Collins did to pineapples while living in Hawaii as youth."

(xiv)   Paragraph 21: "On several occasions, Collins referred to my "dreadlock" hairstyle and told me he was "out to get" me. On one occasion, Collins told me he had previously "beat a discrimination/harassment case against him with FedEx and that the company would fly its lawyers in on a private jet to defend him." He ended by telling me: "So don't think about snitching!"

(xv)    Paragraph 22: "One night as I was leaving FedEx Collins showed me a silver large caliber snubnosed revolver with a black handle that he kept in the glove compartment of his personal vehicle.  He told me: "I stay strapped in case black guys [3]like you with your dreadlocks run up on me."

(xvi)    Paragraph 24: "Sometime in December 2012, on a Friday evening after servicing Wal-Mart distribution at its Sutherland, Va. location, I met with Collins and Operations Manager Michael Capps to discuss the line haul/road driver position. I asked Collins if I were eligible for consideration for the line haul position. Collins stated I was not because I was still on probation pending the appeal."

(xvii)    Paragraph 25: "Collins responded that the appeal decision would not be in my favor, and that I 'should not get [my] hopes up.' I replied that I felt I had been discriminated against and harassed by receiving the corrective action that had not been issued to other drivers who committed the same action."

(xviii)    Paragraph 26: "At this time Collins told me: 'Phil, you can go get a job somewhere else if this is how you feel.' I replied, 'This is not right and you know it, you have seen my work ethic, and you know I have been working toward this opportunity for a while.' Collins stated 'If you don't like it Phil, you don't have to work here.' I went to leave Collins' office. As I approached the door, Capps grabbed the handle to hold it shut. I calmly said "Excuse me, sir," but Capps would move from the door."

(xix)    Paragraph 27: "At that moment, Capps and I were face to face and I felt as if Capps was provoking me. I made no comment or gesture toward Capps, but said to Collins, 'TJ, I feel threatened.' Collins replied, speaking to Capps, 'All I need is for you to put it on paper, and he's (referring to me) gone. At that I left the office. I informed Pullen of the incident and racial discrimination along with racial harassment.'

(xx)    Paragraph 29: "At the end of my shift on March 7, 2013, Collins approached me and chided me in the presence of other employees for prevailing in my appeal and being reimbursed my lost wages. Collins then grabbed me strongly by the arm and said menacingly, 'this isn't over.' I reported the incident to an off-duty supervisor, George Hundley. I informed Adrian Prentiss and Charlie Pullen the following day, March 8, 2013.

Each of the above paragraphs contain inadmissible hearsay not contained within any

exception.  Each contains an out-of-court statement not made by Philip Atkins that is squarely

---

[3] Notably, Plaintiff injects the term "black guys" into the instant declaration yet crucially omits this phrase from his deposition testimony, which is the only viable evidence on this point that is properly before this Court.  It is therefore telling that Plaintiff presented the instant declaration instead of relying on his deposition testimony.  Given the centrality of the term "black" in Plaintiff's present claims, this contradiction renders Plaintiff's declaration a sham.  It should therefore be stricken from the record.

aimed at establishing the truth of the matter asserted therein.  To the extent that Plaintiff seeks to rely upon one of the limited exceptions contained within FED. R. EVID. 802, his arguments will fail.  Although Plaintiff will likely claim that many of the above paragraphs contain statements of a party opponent (Defendant), statements not made within the scope of the declarant's agency or employment are excluded by FED. R. EVID. 801.[4]   It is Plaintiff's burden to show that each of the above statements fit within the exception under FED. R. CIV. P. 801(d)(2)(D).  However, Plaintiff has provided this Court no evidence concerning the scope of any declarant's actual job responsibilities.   Plaintiff's "only showing necessary is that the statement is made within the scope of the agency."  *Salami v. North Carolina Agricultural & Tech. State Univ.*, 394 F. Supp. 2d 696, 705-706 (M.D.N.C. 2005) (internal citations omitted.)  Plaintiff did not even undertake to make such a showing.  Without actual facts that establish the scope of any declarant's supervisory role or the necessary details related thereto, Plaintiff cannot overcome Defendant's hearsay objection.  Given the centrality, and therefore importance, of reliable and proper evidence regarding the alleged statements of supervisors in this case, this Court should not shrink from requiring Plaintiff to meet his burden of establishing hearsay exceptions.  The Atkins declaration contains inadmissible hearsay; therefore, it should be stricken and disregarded.

---

[4] *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005) (concluding testimony from others that Mr. Sandoval said he had been promised a promotion was not admissible because he "was not involved in the hiring or promotion process" and the statement was thus "outside the scope of his employment"); *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 91 (3d Cir. 1999) (determining the plaintiff's testimony that two fellow employees told him that two individuals were related was not admissible under Rule 801(d)(2)(D) as there is no indication these statements were made within the scope of the two employees' agency or employment); *King v. Marriott Int'l, Inc.*, No. 9:05-1774, 2007 WL 951738, at *6 (D.S.C. Mar. 27, 2007).

2.      *The Atkins Declaration is not Based on Personal Knowledge*

The following paragraphs are not based on Plaintiff's personal knowledge, but rather constitute speculation, and should be stricken from the record and disregarded when considering Defendant's Motion for Summary Judgment:

(i)     Paragraph 4: "No period performance evaluations were conducted for truck drivers by FedEx to measure my performance.  <u>However, the fact that I received no serious discipline and was retained as a driver indicate that management of the Richmond [sic] I was performing my job duties in a satisfactory manner</u>."

(ii)    Paragraph 23: "The customary decision time for an appeal was 10 days, but the decision in my appeal was not made for nearly four months. During this time I was on probation and not deemed in good standing with the company. As a result, I was ineligible for promotion. I lost multiple opportunities for promotions, including a line haul/road driver position that he was available to me on account of my seniority. That promotion would have increased my salary by approximately $30,000. The delay also deprived me opportunities for transfer to a different Fed Ex service center."

The above paragraphs are not based upon Plaintiff's knowledge.  Rather, they contain speculation about everything from Plaintiff's job performance (to which he cannot speak, as job performance can only be established by the employer) to his eligibility (and, in fact, selection) for promotions.  They are therefore inadmissible and should be disregarded by this Court in its analysis of Defendant's Motion for Summary Judgment.

3.      *The Atkins Declaration is Conclusory and Self-Serving, and is Therefore Inadmissible.*

The Atkins Declaration contains numerous instances of conclusory, self-serving statements that are "improper to consider in opposition to a motion filed pursuant to Rule 56" and must be stricken.  *See Cooper v. Nan Ya Plastics Corp.*, No. 4:04-21823, 2007 WL 2484126 (D.S.C. Jul. 20, 2006).  The following paragraphs should be disregarded in this Court's analysis of Defendant's Motion for Summary Judgment:

(i)     Paragraph 23: "The customary decision time for an appeal was 10 days, but the decision in my appeal was not made for nearly four months. During this time I was on

probation and not deemed in good standing with the company. As a result, I was ineligible for promotion. I lost multiple opportunities for promotions, including a line haul/road driver position that he was available to me on account of my seniority. That promotion would have increased my salary by approximately $30,000. The delay also deprived me opportunities for transfer to a different Fed Ex service center."

(ii)   Paragraph 32: "I suffered extreme emotional distress and mental anguish as a result of the discrimination and harassment I endured, including being threatened physically and being accosted by Collins. I sought psychological treatment and was taken out of work. I have been unable to return to FedEx or another other company because of post-traumatic stress disorder, extreme anxiety, depression, panic disorder and psychosis. I take medication that prevents me from being able to drive commercially."

The above statements are conclusory and self-serving, and therefore should be disregarded. Plaintiff is unqualified to render opinion testimony regarding his alleged mental conditions or the causes thereof, just as he is unqualified to offer testimony regarding FedEx Freight procedures. Therefore, this Court should disregard them.

## Conclusion

The Declaration of Philip D. Atkins is rife with inadmissible hearsay, speculative testimony, and uncorroborated, self-serving testimony. Therefore, this Court should strike it from the record in its entirety and disregard it in connection to its analysis of Defendant's Motion for Summary Judgment. If this Court is disinclined to strike it in its entirety, it should strike and disregard all portions containing inadmissible evidence which cannot be considered on summary judgment.

Dated: <u>June 3, 2015</u>                     Respectfully Submitted,

                                              **FEDEX FREIGHT, INC.**

                                              By___/s/ *Jimmy F. Robinson, Jr.*
                                              Jimmy F. Robinson, Jr., Esquire
                                              Virginia State Bar Number 43622
                                              jimmy.robinson@ogletreedeakins.com
                                              J. Clay Rollins, Esquire
                                              Virginia State Bar Number 84382
                                              clay.rollins@ogletreedeakins.com
                                              *Counsel for Defendant*
                                              OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
                                              901 East Byrd Street, Suite 1300
                                              Riverfront Plaza, West Tower
                                              Richmond, VA  23219
                                              Tel.:    (804) 663-2336
                                              Fax:    (855) 843-1809

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2015, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff:

Scott Gregory Crowley, Esquire
Virginia State Bar Number 31216
scrowley@crowleyandcrowley.com
Overlook II Building
4870 Sadler Road, Suite 300
Glen Allen, VA 23060
Tel.:    (804) 205-5010
Fax.:    (804) 205-5001

*Counsel for Plaintiff*

**FEDEX FREIGHT, INC.**

By___ /s/ *Jimmy F. Robinson, Jr.*
Jimmy F. Robinson, Jr., Esquire
Virginia State Bar Number 43622
jimmy.robinson@ogletreedeakins.com
J. Clay Rollins, Esquire
Virginia State Bar Number 84382
clay.rollins@ogletreedeakins.com
*Counsel for Defendant*
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
901 East Byrd Street, Suite 1300
Riverfront Plaza, West Tower
Richmond, VA  23219
Tel.:    (804) 663-2336
Fax:    (855) 843-1809

21392425.2